James M. WALKER, Appellant,

v.

UNITED STATES GYPSUM COMPANY, Defendant and Third-Party Plaintiff, and Coley & Peterson, Incorporated, Third-Party Defendant, Appellees.

No. 7846.

United States Court of Appeals Fourth Circuit.

Argued April 20, 1959.

Decided Oct. 5, 1959.

Sidney H. Kelsey, Norfolk, Va., for appellant.

L. S. Parsons and Leigh D. Williams, Norfolk, Va. (Parsons, Stant, Parsons & Mirman, Williams, Cocke, Worrell & Kelly, Charles L. Kaufman, and Ira B. Hall, Norfolk, Va., on brief), for appellees.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

HAYNSWORTH, Circuit Judge.

The District Court granted summary judgment for the defendant in this action for personal injuries upon the ground that the plaintiff's exclusive remedy was a proceeding before the Industrial Commission of Virginia. The plaintiff contends that the question of his employment status should have been submitted to a jury.

Though the courts of a state have construed its Workmen's Compensation Act as a limitation upon the jurisdiction of its common law courts so as to require the court, rather than a jury, to resolve questions of fact as well as of law in determining the jurisdictional fact of em-

ployment status,[1] the Supreme Court has held that in the Federal diversity jurisdiction factual issues involved in that determination must be submitted to a jury. Byrd v. Blue Ridge Rural Electric Cooperative, Inc., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953; Magenau v. Aetna Freight Lines, Inc., 360 U.S. 273, 79 S.Ct. 1184, 3 L.Ed.2d 1224.

■ The established procedures in the federal courts for the determination of jurisdictional questions are not at variance with the prevailing procedures in the state courts. There is no right to a jury trial of disputed facts involved in the determination of a jurisdictional question. In his discretion, the trial judge may find the facts, or he may submit the questions of fact to an advisory jury.[2] In the context in which the question here arises, lower federal courts had held employment status to be jurisdictional, rather than defensive, and have found the relevant facts without the aid of juries.[3] In a different context, the Supreme Court had held employment status to be jurisdictional.[4]

When the Supreme Court held in Byrd and Magenau that state procedures under which the judge finds facts which the state has classified as jurisdictional are inconsistent with federal juridical policy, it made no reference to the established rule in the federal courts that jurisdictional facts are for court determination. Though the federal rule and the rejected state procedure appear identical when the fact in issue is clearly jurisdictional, we ought not to assume that the federal rule has been overturned by implication. It is too firmly founded in a long course of decision. It is not without practical reason for its continuance. Surely, if it was intended to modify such a rule in any way, the Court would have given direct attention to it.

Though it is not clear to us that the Supreme Court in Byrd and Magenau accepted as established the fact that the state had classified the issue as jurisdic-

---

1. Adams v. Davison-Paxon Co., 230 S.C. 532, 96 S.E.2d 566; Persing v. Citizens Traction Co., 294 Pa. 230, 144 A. 97; Vescio v. Pennsylvania Electric Co., 336 Pa. 502, 9 A.2d 546. Cf. Googe v. Speaks, 194 S.C. 206, 9 S.E.2d 439; Walters v. Kaufmann Department Stores, Inc., 334 Pa. 233, 5 A.2d 559.

2. Gilbert v. David, 235 U.S. 561, 35 S.Ct. 164, 59 L.Ed. 360; Wetmore v. Rymer, 169 U.S. 115, 18 S.Ct. 293, 42 L.Ed. 682; Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111; McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135; KVOS, Inc. v. Associated Press, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183; Taylor v. Hubbell, 9 Cir., 188 F.2d 106; Williams v. Minnesota Mining and Manufacturing Co., D.C.S.D. Cal., 14 F.R.D. 1; 1 Barron and Holtzoff, Federal Practice and Procedure, 1958 Pocket Part, § 352. Professor Moore suggests some of the reasons underlying the established procedures, 5 Moore's Federal Practice, § 38.36. Of course, the judge should not summarily decide the merits of the case in the guise of determining the jurisdiction of the court. Smithers v. Smith, 204 U.S. 632, 27 S.Ct. 297, 51 L.Ed. 656.

3. Taylor v. Hubbell, 9 Cir., 188 F.2d 106; Williams v. Minnesota Mining and Manufacturing Co., D.C.S.D.Cal., 14 F.R.D. 1; see also, Marks Food Corp. v. Barbara Ann Baking Co., D.C.S.D.Cal., 162 F. Supp. 300.

4. Crowell v. Benson, 285 U.S. 22, 52 S. Ct. 285, 76 L.Ed. 598. That was a suit to enjoin enforcement of an award under the Longshoreman's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., and the Supreme Court held that the District Court properly received evidence and tried *de novo* the fact question of employment status. The decision has been criticized as an unwarranted enlargement of the scope of judicial review of administrative findings. See 2 Larson, Workmen's Compensation Law, § 80.42. Under other federal statutes, questions similar to that of employment status have been held defensive, rather than jurisdictional. Grimes v. Raymond Concrete Pile Co., 356 U.S. 252, 78 S. Ct. 687, 2 L.Ed.2d 737; Senko v. La Crosse Dredging Corp., 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404; Gianfala v. Texas Co., 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 775, 776; South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732.

tional,[5] it may be that we are to understand that state classification of its limitations upon its common law courts is not binding upon a federal court exercising its diversity jurisdiction. We need not now consider, however, the broad implications of Byrd and Magenau.[6] We are twice told that this particular fact, if controverted, is to be submitted to a jury in a federal court, though it be classified and treated by the state as it is in South Carolina and Pennsylvania.

■ Virginia's classification of the issue is less clear than South Carolina's. Under the statute, the exclusive remedy is a proceeding in the Industrial Commission, if there is an employment relation, as defined in the statutes, between the parties.[7] The question of employment status has arisen in a number of personal injury actions brought in the common law courts of Virginia. In some of them, the fact questions involved were considered and determined by the trial court,[8] but the parties apparently assumed that to be the appropriate procedure; no one was demanding a submission of the fact questions to a jury, and the Supreme Court of Appeals of Virginia did not adjudicate the right. In another,[9] the trial judge had submitted the sharply disputed fact questions to a jury, and the Supreme Court of Appeals did not consider whether, in his discretion, he might have decided them himself. In yet another,[10] a jury verdict was set aside and the case dismissed upon the ground that, while the testimony was in conflict, there was a fatal inconsistency in the claimant's position on the merits and his denial of an employment relationship. In

that case, however, the court answered an objection that the employment status question had not been properly raised by saying the question was jurisdictional, noticeable at any time by the trial or appellate court. It specifically said that Virginia's Workmen's Compensation Act had deprived her common law courts of jurisdiction of the subject matter of claims within the coverage of that act.[11]

Under these circumstances, we need not, indeed we may not, speculate about Virginia's resolution of this precise question. Under Byrd and Magenau, we must treat the plea as an affirmative defense and hold that any issue of fact involved should have been submitted to a jury, as demanded by the plaintiff.

■ It certainly does not follow, however, that, if there is no issue of fact genuinely in dispute, the question of employment status must be submitted to a jury. Whether the Industrial Commission or the common law court is the exclusive and appropriate forum for the adjudication of the rights of the injured claimant is a preliminary question, related only collaterally to the substantive cause of action. This sort of question is peculiarly appropriate for summary judgment when there is no genuinely disputed issue of fact. The parties should not be put to a long and expensive trial only to have the court discover at the end that the case should have been brought in another tribunal. Nor should the parties and the public suffer the delay and dislocation which necessarily follow if crowded jury trial dockets are burdened with cases in which there is no triable issue. Rule 56, Fed.Rules Civ.Proc. 28

5. On the contrary the issue was regarded as one of personal immunity from suit and treated as an affirmative defense. The state practice thus appeared to be an aberration.

6. See Whicher, The Erie Doctrine and the Seventh Amendment: A Suggested Resolution of Their Conflict, 37 Texas L. Rev. 549; Note, Seventh Amendment Restrictions on the Erie Doctrine, 43 Minn.L.Rev. 580.

7. Code of Virginia, 1950, § 65–37.

8. See Tidewater Stevedoring Corp. v. McCormick, 189 Va. 158, 52 S.E.2d 61; Rea v. Ford, 198 Va. 712, 96 S.E.2d 92; Hann v. Times-Dispatch Pub. Co., 166 Va. 102, 184 S.E. 183.

9. Kramer v. Kramer, 199 Va. 409, 100 S.E. 2d 37.

10. Nolde Bros., Inc. v. Chalkley, 184 Va. 553, 35 S.E.2d 827.

11. Compare the decisions in South Carolina and Pennsylvania, footnote 1, supra.

U.S.C.A., is designed to insure that they need not.

■ We thus turn to consider whether there was a disputed issue of fact for submission to a jury.

The defendant, a large manufacturer of building materials, filed a special plea that the plaintiff was its employee within the meaning of Virginia's Workmen's Compensation Act. The plea was supported by an affidavit of the Works Manager of the Norfolk Plant, in which it was stated that the construction work was being carried on by Gypsum as owner-contractor, and that the work being done was Gypsum's trade and business. In the plea, the defendant asked for a hearing and that the case be dismissed.

The Court considered the plea and the supporting affidavit. Though the plaintiff filed no countervailing affidavit, the Court directed that the testimony of the Works Manager, Thompson, be taken and that the attorney for the plaintiff be afforded an opportunity to cross examine him. On the appointed day Thompson was sworn, was examined by counsel for Gypsum and extensively cross examined by the attorney for the plaintiff. No other evidence was offered.

The record thus made discloses that Gypsum has an engineering division and a construction division. The construction division has its headquarters in Gypsum's home office in Chicago, where there are as many as 35 to 40 employees engaged in its work. Employees of the construction division at various plants in the field may number several hundred, 32 being regularly assigned to the Norfolk plant at the time of the accident.

When new construction is contemplated the engineering and construction divisions work together, sometimes with the assistance of outside consultants, to develop detailed plans and specifications. The construction work, itself, is done by the construction division, though when an entirely new plant is being erected, some or all of the work may be subcontracted. Plant additions, modernizations and rearrangements were handled in similar fashion, except that the construction division was more likely to execute all of the work in those cases than in the erection of an entirely new plant.

The Norfolk plant had been built in 1949, and in 1955 it was enlarged by a plant addition, which required certain work in the old building, including the relocation of sprinkler system pipes and other pipe lines. For the new addition Gypsum acted as owner-contractor. There was no independent general contractor on the job, but contracts were entered into with several different companies by which each undertook to do certain portions of the work. The work was supervised by a general construction superintendent and 15 supervisors, all being employees of Gypsum's construction division, responsible directly to the head office of that division in Chicago. They supervised and coordinated all of the work, a function of a general contractor.

The 32 mechanics in the construction division regularly assigned to the Norfolk plant were generally responsible for plant maintenance, repairs, renovations, and structural and mechanical changes. They did new construction work. Each of them was carried on the payroll as a mechanic, no one of them being classified by a particular trade, but they did plumbing work, as well as electrical, carpentry, and other work. During the progress of the work in 1955, these 32 mechanics, or some of them, were engaged in removing and relocating pipe lines in the old building to accommodate the new construction, or to tie in with it. The plant was still in operation, however, so that, with their other duties, they could not do all that was required in this connection. Coley and Peterson, plumbing contractors, and E. K. Wilson & Company, another plumbing contractor, were engaged by Gypsum to do designated portions of the work. By a work order, Coley and Peterson were directed to rip out a portion of the sprinkler system in the old building, and the plaintiff, an employee of Coley and Peterson, was assigned to this work,

during the course of which he was injured.

On cross examination of Thompson, the plaintiff brought out the fact that Gypsum's construction division does work only for the Gypsum Company. They have not contracted to do construction work for others and do not hold themselves out to the public as plumbers available for private work. The plaintiff did not offer any evidence, or affidavit, or take any other step to dispute, or deny, the testimony of Thompson.

The District Court treated the plea as a motion for summary judgment under Rule 56, as he was authorized to do by Rule 12(b). He granted the motion.

Though repeatedly asked by this Court what issue of fact he wished submitted to a jury, the attorney for the plaintiff was unable to point to one. Though he came forward with nothing when, under Rule 56(c), he should have disclosed what evidence he had that bore upon the issue, he said he would like to introduce evidence (1) that Gypsum did not do general construction or plumbing work for others and (2) that Gypsum did not do all of the plumbing work in connection with the enlargement of its Norfolk plant in 1955. To both of those facts, Thompson had testified unequivocally. There is no dispute about them. Additional testimony to the same effect could create no issue of fact, for it would only confirm what the record already shows. Since he questions in no way the facts to which Thompson testified, counsel for the plaintiff conceded that the only question arises out of his contention that a manufacturer doing construction work, but for itself exclusively, cannot be a substituted employer, under Virginia's Workmen's Compensation Act, of the employees of a plumbing subcontractor.[12]

Evidentiary facts, though undisputed, do not always conclusively establish the ultimate fact at issue. When the ultimate fact is to be inferred from evidentiary facts, the choice between permissible inferences is for the trier of facts.

Here, however, if the ultimate fact be whether Gypsum was engaged in the construction business in aid of its own manufacturing operations, nothing is left to inference. The record positively shows that it was engaged in that business. The plaintiff does not deny it.[13] Gypsum continuously maintains a construction division, and was actively engaged in the construction of this very project. It was acting as general contractor and, through its own mechanics was removing and relocating pipe lines in the old building, the work in which the plaintiff was engaged when he was injured. There is no room for an inference that Gypsum once was, but is no longer, engaged in that business.

There remains the plaintiff's contention, upon which he primarily relies, that a manufacturer doing construction work for itself, but not for others, cannot be a substituted employer of the employees of subcontractors within the meaning of Virginia's Workmen's Compensation Act.

As orginally enacted, Virginia's Workmen's Compensation Act made general contractors the substituted employers of the employees of their subcontractors.[14] Such provisions are usual in such acts, for they are a necessary compensation for the exemption of small employers,[15] and further the general purpose of the compensation acts to make the industry bear the cost of industrial accidents. Originally, however, Virginia's act did not expressly subject an owner to its obligations.

---

12. The plaintiff also contends that though there be no disputed issue of fact, the question arising under his contention and the ultimate conclusion of employment status, though questions of law, must still be submitted to a jury, under the decisions in Byrd and Magenau. We read no such direction in those decisions.

13. There is no question of credibility here, as there was in Byrd.

14. See the Code of Virginia, 1950, § 65–27.

15. See the Code of Virginia, 1950, § 65–25.

In Bamber v. City of Norfolk, 138 Va. 26, 121 S.E. 564, the Supreme Court of Appeals of Virginia, pointing to the fact that the act did not reach "owners," held that the City of Norfolk was not the substituted employer of an employee of a contractor engaged in erecting a standpipe which was a necessary addition to the water system which the City of Norfolk maintained. Virginia's General Assembly promptly reacted by amending the act to make the owner a substituted employer if the work being done is a part of the trade, business or occupation of the owner.[16]

█ The amendment would be meaningless if construed to reach an owner, only if the owner is also a general contractor,[17] already subject to the obligations of the act.[18] Clearly the legislative intention was to impose the obligations of the act upon an owner in every case in which the work being done is a kind of work which employees of the owner usually or appropriately do, though, in the particular instance, some or all of the work was being accomplished through independent contractors. See Sykes v. Stone & Webster Engineering Corporation, 186 Va. 116, 41 S.E.2d 469; Sears, Roebuck & Co. v. Wallace, 4 Cir., 172 F. 2d 802; Doane v. E. I. Du Pont de Nemours & Co., 4 Cir., 209 F.2d 921. Few manufacturers do plant maintenance or construction work for others, but when one regularly and customarily does such work for himself it is part of his trade, business or occupation within the meaning of § 65-26 of the Code of Virginia, 1950.

Our construction of Virginia's statute, reinforced by the history of the 1924 amendment, conforms with the construction of similar statutes in other states. Marchbanks v. Duke Power Co., 190 S.C. 336, 2 S.E.2d 825; Boseman v. Pacific Mills, 193 S.C. 479, 8 S.E.2d 878; Lessley v. Kansas Power & Light Co., 171 Kan. 197, 231 P.2d 239; Thibodaux v. Sun Oil Co., 218 La. 453, 49 So.2d 852; Willard v. Bancroft Realty Co., 262 Mass. 133, 159 N.E. 511; Atlas Powder Co. v. Hanson, 8 Cir., 136 F.2d 444; Leslie v. Cities Service Refining Corporation, 5 Cir., 252 F.2d 902.

There being no issue of disputed fact to submit to a jury, the District Court properly granted summary judgment for the defendant, since, under Virginia's Workmen's Compensation Act, plaintiff's exclusive remedy is a proceeding in the Industrial Commission.

Affirmed.

---

16. The history of this amendment is considered in Sears, Roebuck & Co. v. Wallace, 4 Cir., 172 F.2d 802. The amendment is now incorporated in the Code of Virginia, 1950, as § 65-26:

"§ 65-26. Liability of owner to workmen of sub-contractors. When any person (in this section and §§ 65-28 and 65-29 referred to as 'owner') undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section and §§ 65-28 to 65-31 referred to as 'sub-contractor') for the execution or performance by or under such sub-contractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Act which he would have been liable to pay if the workman had been immediately employed by him."

17. Gypsum apparently was acting as general contractor here, and decision might rest on that ground.

18. See Code of Virginia, 1950, § 65-27.