Samuel A. Spiegel, J.
The issue confronting this court is whether to apply the substantive laws of the State of New York or of the Commonwealth of Virginia, in an out-of-State wrong *995 ful death action due to an accident other than in an automobile or airplane. Jurisdiction of this court is not challenged.
This is an action to recover damages in the sum of $500,000 for wrongful death and $50,000 for conscious pain and suffering.
When this matter was called for trial, counsel agreed with the court that until the appropriate substantive law was determined, obviously, there could be no trial on the issue of negligence.
As a consequence, counsel submitted an agreed statement of facts on which to resolve the motion before this court.
The defendant asserts three separate and complete affirmative defenses to the causes of action herein. In substance, they are as follows:
1. The contributory negligence of the deceased;
2. That pursuant to the laws of Virginia, where the death occurred, plaintiff’s recovery herein, if any, is limited by said Virginia law to an amount not exceeding $30,000;
3. That plaintiff’s exclusive remedy herein is under the Virginia Compensation Act, which would preclude any suit by the widow against the defendant for any common-law recovery.
Essentially, the court will render a decision on the motion of the defendant for a dismissal of the complaint based upon the Virginia law as it relates to the defense of workmen’s compensation, and on the cross motion of the plaintiff for a dismissal of the second and third affirmative defenses.
Substantially, the facts are as follows:
Plaintiff is the widow of Gene MacICendrick, who died of asphyxiation in an oxygen-deficient chamber on January 24, 1961, in Newport News, Virginia. At the time of this accident, the family had resided in Dunkirk, New York, for over 25 years. Except for intervening military service, the deceased had been continuously employed as a welder' by Aleo, a Delaware corporation, and its predecessor, American Locomotive, at its plant in-Dunkirk, New York.
On July 1, 1959, the Department of the Navy entered into an agreement in Newport News, Virginia, with defendant, Newport News Shipbuilding & Dry Dock Company (hereinafter referred to as Newport), a Virginia corporation, for the construction of two Polaris submarines.
The Navy likewise entered into an agreement with Westinghouse, a Pennsylvania corporation, to install the air-conditioning system, also referred to as heat exchangers, in the two submarines.
Westinghouse then contracted in Pennsylvania with deceased’s. employer, Aleo Products, a Delaware corporation, for the purchase of nine emergency heat exchangers pursuant to naval *996 specifications. The contract required that Aleo make good any defects in materials or workmanship and correct any items found inadequate, upon request by Westinghouse. It specifically provided for the correction “in place" of equipment delivered under this agreement.
Pursuant to said agreement, Aleo manufactured and sold emergency cooling systems for installation in various submarines at different shipyards. A system was installed by Newport in each of the two Polaris submarines, Sam Houston and John Marshall. On October 10,1960, certain defects were found in the welding of various portions of the heat exchanger equipment. A repair memorandum was executed by Westinghouse, United States Navy and Newport at Newport News, Virginia, which provided that Aleo personnel would arrive at Newport News on December 19, 1960 to make weld repairs to the heat exchangers.
Newport was at no time a party to any contract with Aleo. The inadequacy of the heat exchange system necessitated Aleo’s presence in Virginia solely for the specified repairs.
By reason of the foregoing, Aleo sent four of its employees to Virginia. Three of these employees, including deceased, came from Dunkirk to Newport News. While working on the submarines, the employees lived in a motel in Newport News.
Commencing October 20, 1960, and up to January 24, 1961, decedent worked for Aleo as a welder at shipyards in Newport News and Pascagoula, Mississippi, except for the Thanksgiving and Christmas holidays when he returned to his family in Dunkirk.
Aleo did business in Dunkirk, New York, and in Pittsburgh, Pennsylvania. Its principal place of business is in Schenectady, New York, and its employees were sent on assignments to various shipyards in Connecticut, Mississippi, New Hampshire, California and Virginia.
Defendant, a Virginia corporation since 1886, is one of the largest shipbuilding companies in the United States. It is in the business of building ships and attending to the repair, construction and maintenance of vessels at its shipyard and dry dock in Newport News, Virginia, exclusively. It has an office in New York City limited solely to sales and had such office there at the time of this accident.
On the morning of January 24, 1961, on the premises of Newport, decedent entered the hard tank through a manhole of the submarine, John Marshall. It is alleged that argon gas had leaked into the chamber, causing an oxygen deficiency and the *997 decedent was asphyxiated. The repair to the cooling system was completed about three weeks after the accident.
Plaintiff made a claim for workmen’s compensation benefits under the Labor Law of the State of New York and was awarded same. No claim was filed for workmen’s compensation under the Labor Law of Virginia or Pennsylvania. Newport was a qualified self-insurer under the Virginia Workmen’s Compensation Act.
Plaintiff urges that Gene MacKendrick was a domiciliary of New York and was ordinarily regularly and permanently employed in the State of New York. He was covered by the Workmen’s Compensation Law of the State of New York. His estate is being administered in New York and his widow and family reside in New York. His trip and temporary stay in the Commonwealth of Virginia were at the instance of his employer, and the work to be performed was on a product manufactured in Dunkirk, New York. He was in Virginia at the time of his death, adventitiously and fortuitously only because of the accidental circumstance that the submarine was there and his employer had sent him there on a temporary assignment.
The defendant urges that it is a Virginia corporation, domiciled in Virginia, and has no connection with the State of New York; that decedent lived and worked in Virginia at the time of the accident; that any and all repairs were required pursuant to a work order resulting from a deficient product; that the original agreement with Westinghouse was made in Pennsylvania ; that the suit is authorized by the wrongful death statute of the Commonwealth of Virginia; that the job involved came from work orders issued and executed outside New York; that Newport seeks the protection of the very laws of the State in which it is incorporated, domiciled and transacts business; and that to apply New York law would deny defendant due process.
Defendant adds that since plaintiff seeks damage under the Virginia wrongful death statute, recovery, if at all, should be limited to an amount not exceeding $30,000 (Code of Va. of 1950, § 8-633 et seq.).
The principal interest which the Commonwealth of Virginia has in this case is that the death occurred on its soil while deceased was within its territory, and defendant is the largest single corporation resident in Virginia, and contributes more to the economic health and vitality of that State than any other corporation or business.
Defendant concludes that since death occurred in the course of employment in Virginia, plaintiff’s exclusive remedy is under *998 the Virginia Compensation Act which is analogous to the Workmen’s Compensation Law of New York.
In short, defendant contends very simply that the lex loci delicti should apply.
Let us examine the Virginia Compensation Act relied on by the defendant.
Under the Code of Virginia (former §§ 65-26, 65-27 and 65-28), the owner, contractor and subcontractor are liable for compensation benefits to an employee performing work as part of the over-all trade, business or occupation.
Former section 65-37 of the Code of Virginia further provides : 1 ‘ The rights and remedies herein granted to an employee * * * shall exclude all other rights and remedies of such employee, his personal representative # * * on account of such injury, loss of service or death.” Paraphrasing the foregoing, the defendant argues that the Virginia Code provides in effect that no matter what happens to an employee on a job in Virginia, his sole remedy is workmen’s compensation. This, of course, applies as well to the representative of an employee who suffered death. In effect, this statute prevents a monetary recovery in any action against a third party for wrongful death.
Our courts have emphatically declared that statutory recovery limitations are repugnant to our established public policy and that the amount recoverable in this State in a wrongful death action of a New York resident is not subject to the statutory limitations of the State where the death took place (Kilberg v. Northeast Airlines, 9 N Y 2d 34; Tjepkema v. Kenney, 31 A D 2d 908).
Moreover, section 65.1-5 of the Virginia Code provides as follows: “ 65.1-5 — Employees of independent contractors. Nothing in this Act contained shall be construed to make, for the purposes of this Act, the employees of an independent contractor tbe employees of the person or corporation employing or contracting with such independent contractor. ’ ’
In view of the foregoing section, Gene MacKendrick, at the time of his death, as an employee of an independent contractor, did not come within the purview of the Workmen’s Compensation Act of the Commonwealth of Virginia.
The position taken by the defendant would appear to substantiate the fact that Aleo, MacKendrick’s employer, was indeed an independent contractor, rather than a subcontractor. Defendant, in its memorandum, states on pages 3 and 5: “ Aleo was not a subcontractor to Newport and performed no work for the shipyard at any time. * * * The fact is that there was no relationship between Newport and Aleo, and the work being *999 performed by Aleo was being done in behalf of Westinghou.se and the Navy.”
Concerning the application of the Virginia Compensation Act, defendant cites decisions which require discussion.
In Walker v. United States Gypsum Co. (270 F. 2d 857), the court, in effect, held that plaintiff’s exclusive remedy was under the Workmen’s Compensation Act. In that case, the defendant acted as an owner-contractor of a certain project. The court found that there was no independent general contractor on the job, but that contracts were entered into by the owner with several different companies, whereby each undertook to perform a certain portion of the work. The plaintiff, as employee of a plumbing contractor, was injured during the course of his employment on this particular project. Under those circumstances, the court applied the law of Virginia and decided that the plaintiff was in effect an employee of the owner-contractor for the purposes of the application of the Virginia Workmen’s Compensation Act.
In McCann v. Newport News Shipbuilding & Dry Dock Co. (177 F. Supp. 909), plaintiff was an employee of the IngersollBand Co. of New Jersey. He was injured on October 14, 1955, while on the premises of the defendant shipyard. An air compressor had been purchased by the shipyard from IngersoEBand, and, as part of the contractual agreement between the parties, Ingersoll-Band was to supply a supervisor of erection for a period of 14 days. The shipyard was obligated to pay the traveling and Eving expenses of the individual selected. By separate contract with the shipyard, McLean Contracting Co. had installed the foundation for the air compressor. However, the actual installation and erection of the compressor were undertaken by the shipyard’s hull fitting and pipe department. Shipyard employees, along with plaintiff, were actively engaged in the installation and erection of the air compressor at the time of the accident.
The court, in holding that plaintiff’s remedy was under the Virginia Workmen’s Compensation Act, stated as follows (p. 914): “ As we read these decisions, the decisive question is whether the claimant was injured while engaged in an operation which entered directly into and became a part of the business of the person for whom the work was being done. If a workman is so engaged, he is covered by the compensation which the owner of the business is obliged to furnish, and he has no right of action against anyone else engaged in the same operation.”
*1000 The foregoing cases differ substantially from the case at bar. Herein, there was no contract between defendant and decedent’s employer and the circumstances of employment vary materially.
Apart from applying the principles in the decisions which form the body of accepted public policy, a thorough analysis of the contracts and the other facts and circumstances herein, convince this court that the widow cannot be denied a recovery by any forced, strained, or unnatural construction, to the effect that deceased was a workman exclusively constricted and confined to a remedy under the Workmen’s Compensation Act of Virginia. Accordingly, the Virginia Compensation Act does not preclude or even limit a recovery herein.
Formerly, the established rule of lex loci delicti determined the substantive rights and liabilities of the parties by limiting the application of the law to. that one jurisdiction.
Irrespective of the location of the accident, the trend today is to apply the law of the State, having the ‘ ‘ paramount interest ’ ’, “ major grouping of contacts ”, “center of gravity ”, from which the best interests of justice will prevail.
The archaic lex loci delicti theory was sacrosanct, and modification, change or attack was inconceivable. Suddenly, a broad and seemingly unbridgeable gap was closed by recent decisions. A meaningful ideology emblazoned our pages of legal history. Frustration, injustice and travail, which had been inevitable for New York residents in out-of-State accidents for generations, culminated in a triumph for justice.
Until the cogent, persuasive and impregnable arguments in Babcock v. Jackson (12 N Y 2d 473) by our Court of Appeals, inertia blanketed and checkmated progress in this heretofore unexplored area. Under the impetus of Babcock, there followed the Long, Farber, Macey and Tooker poignant decisions (infra). At last, a New York domiciliary’s inalienable right to justice in a conflict-of-laws case became the accepted, unimpeachable and irrefutable public policy of our courts.
Babcock v. Jackson (supra), Kilberg v. Northeast Airlines (supra), Dym v. Gordon (16 N Y 2d 120), Long v. Pan Amer. Airways (16 N Y 2d 337), Fornaro v. Jill Bros. (22 A D 2d 695) were determined by “ grouping of contacts ”. Some decisions held New York law applicable (Babcock, Kilberg, supra), while others held the laws of another jurisdiction applicable under the same theory (Dym, Long, supra). The theories advanced in applying the appropriate State law were 1 ‘ paramount interest ”, “center of gravity”, “grouping of contacts ”, “ best interests of justice ” and “ public policy ”.
*1001 In Montalvo v. Morales (18 A D 2d 20), cited by defendant, no question of any conflict of law was raised. Kaufman v. American Youth Hostels (5 N Y 2d 1016), cited by defendant, was decided pre-Babcock and does not apply today. Thomas v. United Air Lines (30 A D 2d 32), also cited ¡by defendant, involved a maritime tort and is not analogous to the present situation.
In 1963, our Court of Appeals, in Babcock (supra) first promulgated the “grouping of contacts” or “center of gravity” application in out-of-State tort cases. The court pointed to the ‘ ‘ weighing of contacts ’ ’ as integral to the choice of law of the jurisdiction with the most significant contacts with the parties. The court departed from the stifling lex loci delicti theory, when it held that since New York was the State where the parties resided, where the driver-guest relationship arose, and where the trip began and was to end in a New York licensed vehicle, New York had the dominant contacts and superior claim to the application of its law.
At pages 481 to 482, the court declared: “ The merit of such a rule is that 1 it gives to the place “ having the most interest in the problem ” paramount control over the legal issues arising out of a particular factual context ’ and thereby allows the forum to apply ‘ the policy of the jurisdiction “ most intimately concerned with the outcome of [the] particular litigation.” ’ (Auten v. Auten, 308 N. Y. 155, 161.) ”
The next significant decision on conflict of laws was Dym v. Gordon (16 N Y 2d 120) decided in 1965. Plaintiff was injured while a passenger in defendant’s car when it collided with another vehicle in Colorado. Colorado has a statute which generally bars a guest in an automobile from recovering against the host. By a divided court (4-3) our Court of Appeals applied the Colorado statute and dismissed the complaint.
Macey v. Rozbicki (18 N Y 2d 289) followed shortly thereafter. Plaintiff, a New York resident, was visiting her sister and brother-in-law, also New York residents, at their summer residence in Ontario. She sustained injuries in Ontario, while riding as a passenger in her sister’s car. The court followed the rule in Babcock v. Jackson (supra), rather than Dym v. Gordon (supra), holding that the law of New York, rather than the ‘ ‘ guest statute ’ ’ of the Province of Ontario would govern the action for damages for personal injuries.
Other cases followed the principles of the “ grouping of contacts ” approach and the application of the laws of the State, which had the most significant relationship with issues and the *1002 most significant interest in the application of its laws (Matter of Crichton, 20 N Y 2d 124; Farber v. Smolack, 20 N Y 2d 198; Matter of Clark, 21 N Y 2d 478).
Also, in Miller v. Miller (22 N Y 2d 12), the $20,000 limitation on recovery in wrongful death actions under Maine law was not applied in a New York action for the benefit of a resident wife and children of a New York decedent against New York resident defendants, although the accident took place in Maine and the defendants resided there at the time of the accident.
Thus we see that up to this point, with the possible exception of Dym v. Gordon (supra), our courts have uniformly sought to protect its residents by applying the more liberal New York law. The legal principles of “ grouping of contacts ” and “ the interests of the domiciliary state ” appear to have now laid to rest forever the former doctrine that the lex loci delicti is the sole law which governs the substantive rights.
In Tooker v. Lopez (24 N Y 2d 569), the defendant, a New York resident, was the owner of a New York registered vehicle which was used by his daughter, a student at Michigan State University. While driving the car from the university to Detroit with plaintiff’s intestate as a passenger, also a New York resident, the car overturned and both the driver and passenger were killed. In an action brought here by the latter’s estate, the Michigan ‘ ‘ guest statute ’ ’ was raised as an affirmative defense. Special Term granted the motion to dismiss the defense, which was reversed by the Appellate Division holding that it was constrained by Dym v. Gordon (supra), to apply the Michigan law. The Court of Appeals made an exhaustive analysis of the conflict of laws subject as well as other cases and authorities, reversed the Appellate Division and held that the law of New York was applicable in the foregoing circumstances. Judge Burke, in a concurring opinion, stated (p. 591): “it is apparent that our decision in Dym is overruled ”.
It is patently clear that the courts of New York have adopted a rule of choice of law in a conflict situation, which looks to reason, logic and justice in its application of the law which fits the needs of today’s fast moving world, where even travel to the moon may be a reality in the near future.
In Farber v. Smolack (20 N Y 2d 198, supra), the deceased and the defendant were New Yorkers returning to New York from Florida in a New York registered car, when an accident occurred in North ‘Carolina. Under the theory of “ grouping of contacts ”, New York law was properly applied in a wrongful death action. The court said (p. 204);
*1003 “ But, as the court noted in Long v. Pan Amer. World Airways (16 N Y 2d 337, 343), it would be ‘ highly incongruous and unreal to have the flexible principle of Babcock apply in a case where the victim of a tort is injured but not where he is killed ’.
“ Accordingly, when a fatal accident occurs out of State and New York is, as here, the jurisdiction having 1 the most significant relationship ’ with the issue presented (Long v. Pan Amer. World Airways, 16 N Y 2d, supra, p. 343), our wrongful death statute determines the rights of the victim’s survivors. (See Gore v. Northeast Airlines, 373 F. 2d 717.) To the extent that earlier decisions declined to give extraterritorial effect to the statute, they are overruled.”
In Kilberg v. Northeast Airlines (9 N Y 2d 34, supra), deceased, a resident of New York, purchased a ticket from defendant for transportation from New York to Nantucket, Mass. He boarded defendant’s airplane at La Guardia Airport and was killed when the airship crashed and burned at Nantucket.
The General Statutes of Massachusetts allowed a cause of action against a common carrier for negligently causing a passenger’s death but limited the award of damages to not less than $2,000 nor more than $15,000.
Our 'Court of Appeals enunciated New York’s public policy against the imposition of monetary limitations on the recovery in wrongful death cases, noting (p. 40): “ For our courts to be limited by this damage ceiling (at least as to our own domiciliaries) is so completely contrary to our public policy that we should refuse to apply that part of the Massachusetts law.”
In Long v. Pan Amer. World Airways (16 N Y 2d 337), an airplane, owned and operated by defendant, was en route from San Juan, Puerto Rico, to Philadelphia, Pennsylvania, when it disintegrated in flight near the Delaware-Maryland border. The wreckage fell to earth in the vicinity of Elkton, Maryland. Plaintiff’s intestates were killed in the accident.
The decedents resided in Pennsylvania and had purchased their tickets in Philadelphia for the round-trip flights from that city to San Juan.
Both Pennsylvania and Maryland permit recoveries for wrongful death, but the Maryland law, far more limited than Pennsylvania’s, creates a cause of action only for the surviving spouse, parent and child of the deceased, or a person who was wholly dependent on him. Neither of the decedents herein was survived by such relative or persons, and plaintiffs would thus be unable to maintain the actions under Maryland law. Under *1004 Pennsylvania law, the estate would be entitled to a limited recovery for wrongful death.
Our Court of Appeals held the Pennsylvania law applicable under the theories expounded in Babcock (supra).
In Gore v. Northeast Airlines (373 F. 2d 717 [2d Cir., 19673), the New York law was applied on a “ contacts grouping ” theory principally because the domicile of the decedent and his beneficiaries at the time of his death was in New York.
In Pearson v. Northeast Airlines (309 F. 2d 553 [1962]), plaintiff, a New York resident, brought suit in the Federal court against the defendant, a Massachusetts corporation, for the wrongful death of her husband in a plane crash in Massachusetts. The Massachusetts Wrongful Death Act provided for a $15,000 limitation of liability.
The trial court ruled that plaintiff’s recovery was not bound by the arbitrary limitation of Massachusetts and relied on the holding of the New York Court of Appeals in Kilberg v. Northeast Airlines (supra). The court stated (p. 562): “ We therefore see no escape from the proposition we announce today, that a legitimately interested state may, under the circumstances of this case, apply a firmly fixed and long existing policy of its own, although this would remove a defense provided by an1 integral ’ provision of the locus’ statute creating the cause of action.”
In Griffith v. United Air Lines (416 Pa. 1), George H. Hambrecht, a Pennsylvania domiciliary, purchased a ticket from United Airlines, Inc. in Philadelphia for a flight from Philadelphia to Phoenix, Arizona, and return. On July 11, 1961, he boarded a United DC-8 bound for Phoenix. In the course of landing at Denver, Colorado, a scheduled stop, the plane crashed, causing Mr. Hambrecht’s immediate death.
United is a Delaware corporation with its principal place of business in Chicago. It regularly does business and maintains operational facilities in Pennsylvania.
The crux of this Griffith litigation lies in the differing measures of recovery granted in Colorado and Pennsylvania. Colorado’s survival statute provides (in part): “in tort actions based upon personal injury, the damages recoverable after the death of the person in whose favor such action has accrued shall be limited to loss of earnings and expenses sustained or incurred prior to death, and shall not include damages for pain, suffering or disfigurement, nor prospective profits or earnings after date of death.” (p. 6)
Under the Pennsylvania survival statute, recovery may be had for the present worth of decedent’s likely earnings during the *1005 period of ¡his life expectancy, diminished by the probable cost of his own maintenance during the time he would have lived and also by the amount of provision he would have made for the support of his wife and children during the same period. (Skoda v. West Penn Power Co., 411 Pa. 323, 335 [1963].)
Since decedent’s death was apparently instantaneous, his estate could recover little under Colorado law, but might recover a substantial amount under the law of Pennsylvania.
Under the circumstances herein, the law of Pennsylvania was deemed applicable.
In the Griffith case (supra, pp. 11, 13), the court said: “ In this age of increasingly rapid transit of people and goods, that segment of the law known as conflict of laws, or perhaps more accurately, choice of law, has become more and more significant. In view of this development, it is of utmost importance that our Court re-examine its position in this field of law and make certain that our rules are in harmony with the realities .of this age. * * * The basic theme running through the attacks on the place of the injury rule is that wooden application .of a few overly simple rules, based on the outmoded ‘ vested rights theory,’ cannot solve the complex problems which arise in modern litigation and may often yield harsh, unnecessary and unjust results.”
Carter v. Tillery (257 S. W. 2d 465 [Civ. App. Tex., 1953]) is cited as an extreme example of the unjustness of rigid, unreasoned adherence to the rule of lex loci delicti. Plaintiff, her husband and defendant, all residents of Texas, were on a flight from New Mexico to Él Paso, Texas, in defendant’s private plane. The plane strayed off course and landed on a dirt road in Mexico. While attempting to take off, the plane crashed. The Texas forum held that the law of the place of injury, Mexico, applied. ¡Since the Mexican remedy was so dissimilar from that afforded in Texas, the Texas court refused to grant relief and dismissed. Apparently, because all parties were residents of Texas, suit could not have been brought in Mexico. Thus, plaintiff was left without redress.
In Gordon v. Parker (83 F. Supp. 40 [D. Mass., 1949]), a Pennsylvania domiciliary brought suit in the Federal District Court of Massachusetts for alienation of his wife’s affections by a Massachusetts resident. Pennsylvania, the matrimonial domicile and apparent place of the injury, had abolished such causes of action; Massachusetts had not. After expressly analyzing the interests and policies of the two States, the court ruled that Massachusetts law governed and denied the motion for summary judgment.
*1006 In Grant v. McAuliffe (41 Cal. 2d 859), a collision occurred in Arizona between two California automobiles containing California residents. Arizona law would not permit an action to be commenced after death of the tort-feasor; California imposed no such limitation. In order to avoid application of the lex loci delictus rule, the California court applied the California law because it was the law of the forum administering the decedent’s estate.
In Schmidt v. Driscoll Hotel (249 Minn. 376), defendant, in Minnesota, illegally sold liquor to an intoxicated person whose automobile was involved in a collision with another Minnesota automobile while in Wisconsin. Minnesota imposed liability for the intoxicated person’s conduct upon the tavern keeper who made the illegal sale; no liability was imposed on the seller under Wisconsin law on these facts. The court observed that the interest of Minnesota in punishing violations of its liquor laws and in providing an injured party with a remedy would be negated if Wisconsin law applied. The court refused to apply the law of the place of the injury and instead the forum law of Minnesota controlled.
The Supreme Court of Wisconsin, in Haumschild v. Continental Cas. Co. (7 Wis. 2d 130), had before it a suit by a Wisconsin wife against her husband for injuries sustained in a motor vehicle collision in California. Under Wisconsin law, a wife may sue her husband in tort; in California, she may not. The court specifically overruled a long line of cases. It characterized the issue as one of “ family law”, not tort law, and applied the law of the domicile and not the lex loci delicti.
The Supreme Court of the United States has favorably acknowledged the recent tendency of courts to depart from the place of the injury rule in order to take into account the interests of the 'States having contacts with the issues and the parties. (Richards v. United States, 369 U. S. 1, 12-13.)
In Lowe’s North Wilkesboro Hardware v. Fidelity Mut. Life Ins. Co. (319 F. 2d 469 [4th Cir., 1963]), a North Carolina plaintiff brought an action in that State against a Pennsylvania insurance company for negligent delay in acting upon an application for life insurance. Pennsylvania law, which denied such a cause of action, was applied. The Court of Appeals so held (p. 473) because Pennsylvania had “ the most significant relationships with events constituting the alleged tort and with the parties.” (See, also, George v. Douglas Aircraft Co., 332 P. 2d 73 [2d Cir., 1964].)
In Griffith v. United Air Lines (supra, pp. 22-23), the court said:
*1007 “We are at the beginning of the development of a workable, fair and flexible approach to choice of law which will become more certain as it is tested and further refined when applied to specific cases before our courts.
“We acknowledge that in adopting a new approach in the area of choice of law, of necessity, we overrule our earlier cases based on the lex loci delicti rule. But we must not perpetuate an obsolete rule by blind adherence to the principles of stare decisis. Although adherence to that principle is generally a wise course of judicial action, it does not rigidly command that we follow without deviation earlier pronouncements which are unsuited to modern experience and which no longer adequately serve the interests of justice. Surely, the orderly development of the law must be responsive to new conditions and to the persuasion of superior reasoning. ‘ [W]hen a rule, after it has been duly tested by experience, has been found to be inconistent with the sense of justice or with the social welfare, there should be less hesitation in frank avowal and full abandonment * * * There should be greater readiness to abandon an untenable position when the rule to be discarded may not reasonably be supposed to have determined the conduct of the litigants, and particularly when in its origin it was the product of institutions or conditions which have gained a new significance or development with the progress of the years.’ (Cardozo, The Nature of the Judicial Process 150-151 [1921].”
In McSwain v. McSwain (420 Pa. 86), Herbert McSwain, a Pennsylvania domiciliary, a member of the armed forces stationed on the West Coast, accompanied by his wife and infant daughter, embarked on a cross-country trip to Pennsylvania. En route, the McSwain family was involved in an accident when their automobile, operated by appellee, ran off a Colorado highway. As a result of the mishap, the McSwain’s infant daughter sustained fatal injuries and died on the following day.
Subsequently, Mrs. McSwain instituted suit in Pennsylvania under the Colorado Death Act, naming her husband as defendant and alleging that the accident and death of the child were the result of his negligence. The court said (p. 94):
“ In a series of significant decisions, a number of jursidictions abandoned ‘ vested rights ’ and its embodiment in the rule of lex loci delicti. Recognizing that the state of the situs of the ‘ tort ’ may not necessarily have a sufficient interest in the issue in dispute to warrant the interjection of its policies into the litigation, these courts embarked upon a new approach to the solution of choice of law problems which replaced the a priori *1008 assumptions of lex loci delicti with an analysis of the interests of the various states factually involved in the matter in dispute.”
“We are led to this conclusion by an examination of the respective interests of Colorado and Pennsylvania in the effect to be given the marital relationship on appellant’s right to proceed against her husband. Pennsylvania, by its rule prohibiting such suits, has expressed an interest in foreclosing litigation as an avenue for engendering friction between spouses. See, e.g., Johnson v. Peoples First National Bank & Trust Co., 394 Pa. 116, 145 A. 2d 716 (1958); Parks v. Parks, 390 Pa. 287, 135 A. 2d 65 (1957); Kaczorowski v. Kalkosinski, 321 Pa. 438, 184 A. 663 (1936). Colorado, on the other hand, by its rule permitting such suits, has expressed an interest in providing redress for the injured spouse even if obtained at the expense of marital harmony.” (p. 95).
“And, although Colorado, as the state of both the conduct and injury could assert an interest in this litigation in order to further the deterrence of negligent conduct on its highways and to secure, in the event of insurance, a fund for the payment of local creditors, those interests would not be disserved by the application of the Pennsylvania rule of interspousal immunity in the .instant case.” (p. 96).
“ Our conclusion to look to the law of Pennsylvania on the issue of intramarital immunity rests, not upon a fixed and invariable rule of characterization, such as would dictate resort to the law of the marital domicile in all such cases, but upon a determination that the circumstances of the instant case do not warrant the interjection of Colorado law into what is essentially a Pennsylvania family controversy. The mere fact that the accident occurred in Colorado, absent the expression of a significant interest on the part of that state, does not justify our refusal to give effect to the public policy of this Commonwealth.” (pp. 96-97).
In Van Dusen v. Barrack (376 U. S. 612), the commercial airline,- scheduled to fly from Boston to Philadelphia, plunged into the Boston Harbor after departing from Boston Airport. As a result of the crash, over 150 actions for personal injuries and wrongful death were instituted against various defendants. More than 100 actions were brought in the United States District Court for the District of Massachusetts and more than 45 actions in the United States District Court for the Eastern District of Pennsylvania. This case involved the 40 wrongful death actions brought in the Eastern District of Pennsylvania *1009 by personal representatives of victims of the crash. The defendants sought to transfer the Pennsylvania actions to the District of Massachusetts, where it was alleged that most of the witnesses resided, and over 100 actions are pending. The court said (pp. 625-626): “Whenever the law of the transferee State significantly differs from that of the transferor State — ■ whether that difference relates to capacity to sue, statutes of limitations, or ‘ substantive ’ rules of liability — it becomes necessary to consider what bearing a change of venue, if accompanied by a change in state law would have on ‘ the interest of justice. ’ ’ ’
The court indicated that transfer to a more convenient forum should not be granted on a defendant’s motion where the transfer would seriously prejudice the plaintiff’s legal claim and would be against the interest of justice. It was apparent that Massachusetts and Pennsylvania transferee and transferor courts have significantly different laws concerning recovery for wrongful death. The Massachusetts Death Act limited recovery for a sum not less than $2,000 nor more than $20,000 and in Pennsylvania the recovery of damages is based upon compensation for loss and is not limited to $20,000.
The Massachusetts Death Act was punitive, not compensatory, irrespective of the pecuniary loss (see Pearson v. Northeast Airlines, 309 F. 2d 553, supra). The court continued (pp. 635-636): “ The legislative history of § 1404 (a) certainly does not justify the rather startling conclusion that one might ‘ get a change of law as a bonus for a change of venue.’ * * * We conclude, therefore, that in cases such as the present, where the defendants seek transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue. A change of venue under § 1404 (a) generally should be, with respect to state law, but a change of courtrooms.” (p. 639).
As to contracts, in Auten v. Auten (308 N. Y. 155), New York abandoned the traditional choice of law rules in contracts cases also (place of making, place of performance, etc.) in favor of a “ center of gravity ” or “ grouping of contacts ” theory.
In each of the leading automobile cases discussed — Babcock, Macey, Tjepkema, Miller, Farber and Tooker — New York courts applied the test of “ grouping of contacts “ center of gravity”, “public policy” or “greatest governmental interest ”. In the leading airplane cases of Kilberg, Long, Griffith. *1010 Pearson and McSwain, the same tests were used to determine the appropriate State law to be applied to the case at bar.
In the present situation we have a New York resident temporarily in Virginia at the time of his death, whose death, unlike any of the other cases, occurred not in an automobile or airplane.
If Gene MacKendrick were a passenger in a New York auto on his way to work in Newport News, and were killed in an automobile accident, New York law would surely apply (Babcock, Macey, Farber, Tooker, supra.)
If Gene MacKendrick boarded a plane in New York on his way to work in Newport News and was killed in an air accident, the law of New York would likewise surely apply (Kilberg, Pearson, Gore, Long, Griffith, McSwain, supra).
There is no logical reason to deny to the deceased and to his family, New York domiciliarles, the protection and benefits of the New York law because he happened to meet his death in an industrial accident after his arrival in Newport News on a temporary work assignment from his home office in New York. It would be a mockery and contrary to the intent of the law to extend to him the protection afforded under New York law as a traveler in an auto or airplane, and then divest him of it the moment he disembarks from said vehicle of transportation. When he is divested of New York’s protective cloak would depend on the facts. and circumstances of each case. Surely, however, he should not be defrocked under the facts and circumstances herein present.
Since “ paramount interest ”, “ center of gravity ”, “ public policy” and “ grouping of contacts ” are now applied in auto and airplane torts, as well as in contracts, contempt, property and will cases (James v. Powell, 19 N Y 2d 249 and Miller, Crichton, Gore, Long, Pearson and Auten, supra), then why not here.
Every recent decision involving conflict of laws has unleashed a refreshing barrage against the lex loci delicti theory, in the best interests of justice. The trend, as stated in the concurring opinion of Macey v. Rozbicki (18 N Y 2d 289, 294, 298, supra) is:
“ In determining which law should govern cases involving the guest statute of a foreign jurisdiction and whether a particular State has an interest in the application of its law it seems to me to be of no more than minor significance where the guest-host relationship arose, where the trip was to begin and end, and how short the visit of the parties was in the place where the accident occurred. Neither of these factors has any relation *1011 whatever to the New York policy of affording recovery to injured residents of this State or for that matter to the policies of other jurisdictions in denying a remedy. * * * I reach the inevitable conclusion that we should no longer follow the decision in Dym v. Gordon.” (Italics ours.)
Clearly, the public policy of our courts is to protect New York domiciliaries, wherever possible, from denial of a recovery in another jurisdiction, and Dym v. Gordon (16 N Y 2d 120, supra) was interred for all time and for all purposes.
Both logic and precedent mandate a construction consistent, whenever possible, with the State allowing a just recovery.
Whether we apply the paternalistic public policy test of the New York courts towards its domiciliaries, or apply the “ grouping of contacts “ center of gravity ” or “ best interests of justice ” principles, the inevitable conclusion is that in good conscience plaintiff should not be subjected to the jurisdiction of Virginia, which deprives her of just relief.
In Farber v. Smolack (20 N Y 2d 198, 204, supra), the court summed up as follows: “ When a fatal accident occurs out of State and New York is, as here, the jurisdiction having ‘ the most significant relationship ’ with the issue presented * * * our wrongful death statute determines the rights of the victim’s survivors. * * * To the extent that earlier decisions declined to give extraterritorial effect to the statute, they are overruled.”
Virginia, the place of the accident, was wholly adventitious and fortuitous to the status of the parties.
Does this court thereby unlawfully deprive defendant the protection of its own laws? Is there a denial to defendant of due . process and equal protection, which would do violence to the traditional and fundamental concepts of justice? The court’s answer is in the negative.
On the contrary, to deny plaintiff the protection of the laws of the State of New York, under all of the facts and circumstances herein, would indeed be a gross miscarriage of justice and do violence to the principles of fair play.
Accordingly, New York law should be applied to the situation at hand, thus adding a new dimension to the ever-evolving principles of conflict of laws.
Motion by defendant to dismiss the complaint is denied. Motion by plaintiff to dismiss the second and third separate affirmative defenses is granted.