**Polly Branch BURNETTE, Executrix of the Estate of Robert Vernell Burnette and S. D. Roberts Moore, Ancillary Administrator of the Estate of Robert Vernell Burnette**

v.

**GENERAL ELECTRIC COMPANY**

v.

**The GOODYEAR TIRE & RUBBER COMPANY**

v.

**WENTE CONSTRUCTION CO., INC.**

**Civ. A. No. 72–C–82–D.**

United States District Court,
W. D. Virginia,
Danville Division.

Feb. 13, 1975.

**1318**

Charles J. Nooe, Eden, N. C., for plaintiffs.

S. D. Roberts Moore, Roanoke, Va., for Polly Branch Burnette, Executrix of the Estate of Robert Vernell Burnette.

Charles R. Warren, Jr., Danville, Va., for Wente Const. Co.

Meade, Tate, Meade & Daniel, Law Offices, Danville, Va., of counsel for defendant and third-party plaintiff, General Electric Co.

Henry M. Sackett, Jr., Lynchburg, Va., for Goodyear Tire & Rubber Co.

TURK, Chief Judge.

This wrongful death action was filed by the executrix and ancillary administrator of the estate of Robert V. Burnette (decedent) against the General Electric Company (defendant) on the theory that decedent was electrocuted because of the failure of defendant's employees, servants and agents to exercise ordinary care in activating electricity in the area in which decedent was working at the time of his death. Jurisdiction of this suit is based on the diverse citizenship of the parties. Defendant has moved to dismiss the plaintiffs' complaint for lack of subject matter jurisdiction on the basis that at the time of decedent's death he was engaged in the business activities of the Goodyear Tire and Rubber Company as was the defendant with the result that plaintiffs' exclusive remedy was pursuant to the Virginia Workmen's Compensation Act. Defendant also denies that it was negligent and raises the defenses of contributory negligence and assumption of the risk.

Defendant has filed a third-party complaint against the Goodyear Tire and Rubber Company in which it alleges that the death of decedent was due to the active negligence of Goodyear and thus it is entitled to full indemnification for any amount awarded to plaintiffs against it; or alternatively, it was concurrently negligent with Goodyear and thus is entitled to contribution from Goodyear of one-half of such amount as might be awarded plaintiffs against defendant. Goodyear has responded to the third-party complaint by also contending that decedent was its statutory employee and since under the Virginia Workmen's Compensation Act plaintiffs could not have maintained a suit against it directly, General Electric cannot seek indemnity based on plaintiffs' suit. Goodyear also raises a contractual defense based on its contract with General Electric which provides that General Electric "will indemnify, save harmless and defend [Goodyear] from all liability for

loss, damage or injury to person or property in any manner arising out of or incident to the performance of this contract."

Goodyear has filed a fourth-party complaint against decedent's employer, the A & N Electric Company Division of Wente Construction Company, Inc. (hereinafter A & N), alleging that A & N was negligent in not taking proper precautions to guard against the hazards of employment of the plaintiffs' decedent, and that it [Goodyear] is therefore entitled to indemnity for any amount which might be awarded to General Electric by virtue of the third-party complaint. In support of its claim for indemnity Goodyear relies upon its contract with A & N which provides, *inter alia*, that A & N shall hold Goodyear harmless "from any and all loss, cost, damage, expense or liability by reason of property damage or personal injury of whatsoever nature or kind arising out of, as a result of, or in connection with the performance of the work under this contract occasioned in whole or in part by the actions or omissions of [A & N], its employees, agents or subcontractors." A & N has moved to dismiss the fourth-party complaint against it on the basis that at the time of his death plaintiffs' decedent was an employee of A & N, and therefore plaintiffs' remedies are limited to the benefits provided by the Virginia Workmen's Compensation Act.

## I

■ The initial question is whether the Virginia Workmen's Compensation Act, Va.Code Ann. § 65.1–1 et seq. (1973 Repl.Vol.) bars the plaintiffs' suit against General Electric. Although § 65.1–40 provides that the remedies available under the Workmen's Compensation Act *on account of an employee's death shall exclude other remedies* by his personal representatives at common law or otherwise, §§ 65.1–41, 65.1–42, recognize that the representative may maintain an action "against any other party." The issue is thus whether Gen-

eral Electric qualifies as an "other party" as that term has been interpreted by the Virginia Supreme Court. *E.g.*, Bosher v. Jamerson, 207 Va. 539, 151 S. E.2d 375 (1966); Anderson v. Thorington Construction Co., 201 Va. 266, 110 S.E.2d 396 (1959). For the reasons which follow, the court, at this time and on the basis of the depositions and documents before it, denies defendant's motion to dismiss the complaint.

Briefly, the facts relevant to the question of whether plaintiffs are barred by the Virginia Workmen's Compensation Act from maintaining this suit are as follows. The accident which precipitated this suit occurred during the testing of electrical equipment which had been purchased in connection with Goodyear's expansion of its plant facilities in Danville, Virginia. Goodyear had undertaken this plant expansion through its Corporate Projects and Engineering Division based at its corporate headquarters in Akron, Ohio. The heavy electrical equipment had been purchased from General Electric and the contract for its installation had been awarded to A & N. The procedure by which such purchase and installation were carried out was stated as follows: Goodyear staff engineers in the Corporate Projects and Engineering Division in Akron draw up the specifications for the necessary equipment and then have the Purchasing Department solicit bids; after a bid is accepted, the seller of such equipment (*i. e.* General Electric) submits Mylars to the Goodyear staff engineers who, with the aid of a consulting firm, prepare a "bid package" for installation of the equipment; the Purchasing Department then contracts with a company (*i. e.* A & N) for the installation work; and during the actual construction and installation, "field engineers" from Goodyear are stationed at the plant and work with the contractors to see that the work is done in accordance with the specifications.

In this case A & N was responsible for unloading, assembling and installing a new electrical substation which had

been purchased from General Electric to power the new plant facilities. Ralph Johnson, the A & N Superintendent, stated in his deposition that he coordinated his work with Wayne Price, the resident electrical field engineer from Goodyear, but that Mr. Price did not supervise A & N employees. The accident in question occurred when an employee from General Electric energized a breaker or switch gear during testing of the new substation causing decedent, an A & N employee, to be electrocuted. There was no contractual relationship between A & N and General Electric. A & N was responsible for the installation of the equipment but testimony from Mr. Johnson indicated that A & N had no authority to energize the breaker. Although it is unclear from the present record, certain testimony indicates that General Electric was testing the new equipment in order to validate its guarantee and that testing and inspection of such complicated equipment by its seller was a routine procedure.

The case of Turnage v. Northern Virginia Steel Corporation, 336 F.2d 837 (4th Cir. 1964) presents an analagous fact situation to the case at bar. There, the employees of a cement finisher, which was a subcontractor of the general contract, Reinsch Construction Company, sued another subcontractor which had allegedly supplied defective steel products for use in the construction of an apartment building thereby causing the first floor to collapse and injure the plaintiffs. The issue was whether the suit was barred by the Virginia Workmen's Compensation Act which, as interpreted, depended on whether plaintiffs and the defendant were both engaged in the work of the general contractor. If they were so engaged, defendant came under the canopy of the Act and was immune from suit; on the other hand, if defendant were "a mere supplier of steel" it would not be considered to be engaged in the business of the general contractor and hence, was not immune from suit. The issue was resolved in defendant's favor on the basis that the evidence disclosed that defendant's role in the construction of the building was much greater than that of a mere supplier of steel. In reaching this conclusion, the court pointed to such factors as the fact that defendant frequently visited the job site as the work progressed and made field measurements; it undertook through its own employees to make alterations in steel on the job site; and it advised the general contractor about various construction problems.

Also instructive is the recent case of Bergen v. Fourth Skyline Corporation, 501 F.2d 1174 (4th Cir. 1974) which also involved the question of whether the employee of a subcontractor (Otis Elevator Co.) could sue another subcontractor (Sterling Concrete Corp.) for injuries allegedly caused by defendant supplying inferior concrete and thus causing the collapse of the building under construction. Again the issue was whether defendant was a materialman, or rather, was engaged in the actual construction of the building. The district court had granted summary judgment for the defendant because it had a batching plant at the construction site, several of its employees were under the supervision of another subcontractor engaged in the actual construction of the building, and these employees conducted tests and advised about problems relating to the concrete. The Court of Appeals noted that such a conclusion might ultimately prove correct but felt that it was not justified by the present record. The court stated that defendant's "work on the job may have been incidental to its obligations as a materialman" and thus further factual development was necessary.

The court is of the opinion that the decision in *Bergen* is directly applicable to the case at bar. From the record before it, the court cannot conclude that General Electric was engaged in the business of expanding Goodyear's plant facilities and thus came under the canopy of the Virginia Workmen's Compensation Act. Rather, the court finds the evidence before it to be subject to different inferences on this point, and it

may be that the testing being performed by the General Electric employee at the time of the accident was simply "incidental to its obligations as a materialman." This is illustrated by the fact that the record is unclear as to whether the testing was related to a guarantee on the equipment and whether such testing was routinely performed by General Electric on equipment it sold. The defendant's motion to dismiss, which is considered as a motion for summary judgment, is denied.

## II

■ There remains the issues of whether defendant's third-party action against Goodyear and Goodyear's fourth-party action against A & N may be maintained in face of the immunity granted by the Virginia Workmen's Compensation Act. As noted above, Goodyear contends that A & N had contractually agreed to indemnify it for any amount which it might have to pay on account of the death of plaintiff's decedent. The court is of the opinion that an express contract of indemnity would not be invalidated by the Virginia Workmen's Compensation Act. *E. g.*, Bell v. Federal Reserve Bank, 57 F.R.D. 632 (E.D.Va.1972); see General Electric Co. v. Moretz, 270 F.2d 780 (4th Cir. 1959), cert. denied, 361 U.S. 964, 80 S.Ct. 593, 4 L.Ed.2d 545 (1960) and cases cited therein. Thus in light of Goodyear's allegation of contractual indemnity, A & N's reliance on statutory immunity from the Workmen's Compensation Act should be denied.

■ However, no claim of contractual indemnity is asserted in General Electric's third-party suit against Goodyear, and in fact the reverse situation would appear to be the case, *i. e.* that General Electric agreed to indemnify Goodyear. In the absence of contractual indemnity, General Electric can maintain its third-party suit against Goodyear only if plaintiffs could have sued Goodyear directly, Jennings v. Franz Torwegge Machine Works, 347 F.Supp. 1288 (W.D. Va.1972). Therefore, the issue square-

ly presented is whether under the Virginia Workmen's Compensation Act, decedent was a statutory employee of Goodyear. The court is of the opinion that the relevant facts bearing on this issue are not in dispute; that at the time of his death decedent was engaged in the "trade, business or occupation" of Goodyear within the meaning of § 65.1–29 of the Code of Virginia (1973 Repl.Vol.); and Goodyear is accordingly entitled to summary judgment.

In support of this conclusion the court believes that the case of Walker v. United States Gypsum Co., 270 F.2d 857 (4th Cir. 1959), cert. denied, 363 U.S. 805, 80 S.Ct. 1240, 4 L.Ed.2d 1148 (1960), is controlling. In that case, the court affirmed the granting of summary judgment in favor of defendant based on its claim of immunity under the Virginia Workmen's Compensation Act. The employment relationship between plaintiff and defendant was strikingly similar to that of decedent and Goodyear in the present case. The defendant in *Walker* was a manufacturer of building materials, but as with Goodyear, it maintained a construction and engineering division at its corporate headquarters which was engaged only in construction work for the defendant *i. e.* plant additions, modernizations etc. The accident which was the subject of the suit in *Walker* occurred in connection with the defendant's construction of a plant addition to its Norfolk plant. In undertaking this construction United States Gypsum acted as its own owner-contractor; there was no independent general contractor on the job; and its own employees supervised and coordinated the work of the subcontractors. The plaintiff in *Walker* was an employee of a plumbing subcontractor. Virtually identical circumstances are present with respect to Goodyear. The following statement from *Walker* points up the similarities:

"Here, however, if the ultimate fact be whether Gypsum was engaged in the construction business in aid of its own manufacturing operations, nothing is left to inference. The record pos-

itively shows that it was engaged in that business. The plaintiff does not deny it. Gypsum continuously maintains a construction division, and was actively engaged in the construction of this very project. It was acting as a general contractor and, through its own mechanics was removing and relocating pipe lines in the old building, the work in which the plaintiff was engaged when he was injured. There is no room for an inference that Gypsum once was, but is no longer engaged in that business." 270 F.2d at 862.

On the basis of this authority, Goodyear's motion to dismiss the third-party complaint, which has been treated as a motion for summary judgment, is granted. It necessarily follows that the fourth-party defendant, A & N Electric Company, is also dismissed from the suit.

An order in accordance with the views expressed herein will this day be entered.