Angelo P. CIPRARI, Plaintiff,

v.

SERVICOS AEREOS CRUZEIRO do sul, S.A. (CRUZEIRO), Defendant.

United States District Court
S. D. New York.

Sept. 29, 1965.

Kreindler & Kreindler, New York City, for plaintiff; Lee S. Kreindler, Milton G. Sincoff, Gerald A. Robbie, New York City, of counsel.

Debevoise, Plimpton, Lyons & Gates, New York City, for defendant; Samuel E. Gates, Robert B. von Mehren, John D. Niles, New York City, of counsel.

WYATT, District Judge.

This is a motion by plaintiff for an order under Fed.R.Civ.P. 12(f) striking from the answer the "Second Defense" to the "First Cause of Action" or, in the alternative, for partial summary judgment under Fed.R.Civ.P. 56 striking said "Second Defense".

On motions to strike under Fed.R.Civ.P. 12(f) material outside the pleadings may not properly be considered. Since there are some facts outside the pleadings which are stipulated or otherwise beyond dispute and which ought to be considered on this motion, it is treated as one for partial summary judgment. For reasons which will appear, a denial of this motion by plaintiff for partial summary judgment will result in a partial summary judgment for defendant dismissing the first cause of action.

Jurisdiction is based solely on diversity of citizenship. 28 U.S.C. § 1332.

The first cause of action is based on a provision of the law of Brazil (Air Code, Article 83) which, among other things, gives to an aircraft passenger the right to recover damages from the carrier for "bodily injury" caused by "a defect in the aircraft" or by "the fault of the crew". It is averred that plaintiff was injured in an accident in Brazil while a passenger on an aircraft of defendant ("Cruzeiro") and that the accident "was caused by a defect of the aircraft and/or by the fault of the crew". It is also averred that "any limitation on the amount of damages recoverable which may be contained in the Brazilian Air Code is inapplicable or unenforceable".

The second defense to this first cause of action pleads a limitation of liability contained in the Brazilian Air Code (Article 91) limiting the liability of the carrier under Article 83 (on which this cause of action is based) to 100,000 cruzeiros. The "cruzeiro" is the basic unit of money of Brazil. (The word may come from the Portuguese "cruzado", literally "marked with a cross", which was also the name of a very old gold coin of Portugal bearing a cross to commemorate crusades against the Moors. It is of course without any significance that the corporate name of defendant includes the word "Cruzeiro"). At the time of the accident, 100,000 cruzeiros had a value in American dollars of about $140 and at the present time have a value in American dollars of about half that amount, or less.

It is stipulated that defendant has paid in excess of 100,000 cruzeiros for the account of plaintiff and thus if the Brazilian limitation of liability is applicable there should be partial summary judgment for defendant dismissing the first cause of action.

Two points should be noted preliminarily. The first is that under a section of the Brazilian Air Code the limitation of liability to 100,000 cruzeiros does not apply if there has been on the part of the carrier what the civil law calls "dolus" (Webster's Third New International Dictionary, page 670, gives among other meanings "willful and wanton misconduct in the law of delicts"). The second cause of action is on a theory of "dolus", but *not* the first. Thus, the "dolus" exception is in no way involved on this motion. The second point is that there was no "international transportation" in the case at bar and therefore the Warsaw Convention (49 Stat.

3000), under Article 1 thereof, does not apply.

The motion raises the single question whether as a matter of New York law (which clearly must here be followed by this Court) the Brazilian limitation of liability is valid in an action in New York. Put in a different way: would the Court of Appeals of New York apply in the case at bar the principle laid down for the first cause of action in Kilberg v. Northeast Airlines, Inc., 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526 (1961)?

The relevant and undisputed facts in the case at bar should first be stated.

Plaintiff is 38 years old. He is a citizen of the United States and since October 1962 has been resident and domiciled in New York. He has been employed as a Sales Engineer by Honeywell, Inc., a large, publicly owned Delaware corporation which makes and sells control, regulator, and other equipment. The principal place of business of Honeywell is in Minneapolis, Minnesota but it does business over most, if not all, of the United States. It has subsidiaries which do business in foreign countries, including Honeywell Controles Ltda. in Brazil.

Defendant Cruzeiro is a Brazilian corporation, wholly owned by residents and nationals of Brazil. It is a commercial air carrier, flying scheduled flights on routes principally in Brazil; it has some flights to four neighboring South American countries. It has no flights to or from any of the States of this country. It does not itself sell any tickets in this country. It does not advertise here and it has no ticket office here. Cruzeiro is, however, a member of a large group of air carriers which by agreement issue tickets good over the lines of other members. Some members of this group, such as Pan-American World Airways, Inc., have ticket offices in New York and thus it would be possible for a person, through some other air carrier such as Pan American, to buy a ticket in New York good over the lines of Cruzeiro.

Jurisdiction over the person of Cruzeiro was obtained in this action because Cruzeiro has a small purchasing office in New York with two employees. Nearly all the planes operated by Cruzeiro are manufactured in the United States and the purchasing office is needed to buy spare parts and other equipment for its planes and operations. After a careful review of the facts, Judge Edelstein found that Cruzeiro was subject to the jurisdiction of this Court on the basis of the activities of its purchasing office here (D.C., 232 F.Supp. 433).

In January 1963, plaintiff made a business trip to Brazil. He bought in New York a ticket to Rio de Janeiro from Pan-American and arrived in Rio on a Pan-American plane on January 15, 1963. He evidently had no plans up to that time to go to Sao Paulo, Brazil. When he arrived in Rio, however, he was told by an employee of Honeywell (or Honeywell Controles Ltda.) working in Brazil that he (plaintiff) and the other employee were required at once to go on a business trip to Sao Paulo. There are regular flights by Cruzeiro between Rio and Sao Paulo. On the day of plaintiff's arrival in Rio—January 15, 1963—he and the other employee bought tickets from Cruzeiro for a flight to Sao Paulo. The ticket was entirely in Portuguese and on the reverse contained, among other things, the following (in English translation):

"Contractual conditions. The present transportation is governed by the Brazilian Air Code and other legislation pertinent to the matter. * * *"

Plaintiff does not understand Portuguese. No English translation was given him of the ticket, nor was his attention directed to any of its terms. Plaintiff made no attempt to find out the terms. Whether his companion, who had been working in Brazil, understood Portuguese, does not appear.

Plaintiff and his fellow employee left Rio on Cruzeiro's flight 403 at 2:20 in the afternoon of January 15, 1963. The plane had been made in the United

States. During the landing at Sao Paulo at about 4:05 the same afternoon, the plane crashed and plaintiff sustained severe injuries.

While plaintiff was receiving medical treatment in Brazil, Cruzeiro paid for such treatment much more than 100,000 cruzeiros. Plaintiff was released from the hospital in Brazil and returned to New York.

Plaintiff has made claim under the Workmen's Compensation Law of New York, McKinney's Consol.Laws, c. 67, § 1 et seq., against his employer Honeywell, which is a self-insurer for purposes of workmen's compensation. Honeywell paid for plaintiff's continued medical treatment after he left Brazil and also paid his normal salary during the period of his disability. Honeywell therefore claims a lien against any recovery herein.

The problem begins with Kilberg v. Northeast Airlines, Inc., 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526 (1961). Edward Kilberg, a resident (domiciliary) of New York, bought a ticket in New York from defendant for a flight to Nantucket, boarded in New York a plane of defendant for that flight and was killed when the plane crashed in Massachusetts. Jack Kilberg, as administrator of Edward's estate, sued Northeast on three causes of action, the first in negligence under a Massachusetts wrongful death statute and the second in contract for breach of contract to carry safely; the third cause of action may be disregarded for our purposes. A motion by Northeast to dismiss the second cause of action for insufficiency was denied at Special Term but granted by the Appellate Division. Before the Court of Appeals only the second cause of action was at issue and the Court unanimously affirmed its dismissal below. But four of the Judges (Desmond, Ch. J., and Dye, Burke and Foster, JJ.) in what was technically dicta stated that recovery for the full amount of damages could be had on the first cause of action despite the limit of $15,000 specified in the Massachusetts wrongful death statute. This result was reached by follow-

ing the classic choice of law rule and looking to the law of Massachusetts (the place of the tort) as the source of the right but rejecting as contrary to New York public policy the damage limit in the Massachusetts statute; it was also stated that in view of the strong public policy of New York, the measure of damages could be treated as a "procedural or remedial question" governed by New York law. Judge Fuld declined to express any opinion except as to the second (contract) cause of action. Judges Froessel and Van Voorhis (like Judge Fuld) felt that no question should be reached except that of the second cause of action but they expressed complete disagreement with the majority views on the first cause of action.

The next year came Davenport v. Webb, 11 N.Y.2d 392, 230 N.Y.S.2d 17, 183 N.E.2d 902 (1962), where prejudgment interest, allowed by the law of New York, was *not* allowed where the judgment was in a New York action, where decedents were New York residents, but where the wrongful death occurred in Maryland and under Maryland law prejudgment interest was not allowed. This seems a retreat from the broad language of Kilberg that measure of damages was procedural and governed by New York law.

Then came Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E. 2d 279, 95 A.L.R.2d 1 (1963) where five of the judges agreed to abandon the classic choice of law rule that the law of the place of the tort invariably governed. There was substituted as a rule of New York law that in tort cases controlling effect will be given "to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties has the greatest concern with the specific issue raised in the litigation" (12 N.Y.2d at 481, 240 N.Y.S.2d at 749, 191 N.E.2d at 283). Babcock and Jackson were both residents of New York. They went in an automobile of Jackson on a trip over a weekend to Ontario. The trip thus began and was to have ended in New York. The

car had been licensed, insured and garaged in New York. While Jackson was driving in Ontario, he lost control of the car, it crashed into a stone wall and Babcock was injured. When they returned to New York, Babcock sued Jackson in a New York court. The lower courts dismissed the action by applying the law of Ontario which denies any liability by a host driver of an automobile to a guest passenger. The Court of Appeals reversed, ruling that the law of New York was applicable (although Ontario was the place of the tort) because the "contacts" and "interests" of New York as to "the issue presented" made it clear "that the concern of New York is unquestionably the greater and more direct" than that of Ontario (12 N.Y.2d at 482, 240 N.Y.S.2d at 750, 191 N.E.2d at 284). The issue was whether a host driver is liable for negligence to his guest passenger. New York law as a matter of policy imposes such liability and no reason appeared for substituting Ontario law in a case "affecting New York residents and arising out of the operation of a New York based automobile" (12 N.Y.2d at 482, 240 N.Y.S.2d at 750, 191 N.E.2d at 284). The policy of the denial by Ontario of such liability is to prevent collusive claims against insurance companies but this policy was directed at preventing such claims "against Ontario defendants and their insurance carriers, not New York defendants and their insurance carriers" (12 N.Y.2d at 483, 240 N.Y.S.2d at 750, 191 N.E.2d at 284). Judge Van Voorhis and Judge Scileppi dissented on the ground that the established rule applying the law of the place of the tort should not be changed.

The last New York decision to be considered is that recently (July 9, 1965) handed down by the Court of Appeals in Dym v. Gordon, 16 N.Y.2d 120, 262 N.Y.S.2d 463, 209 N.E.2d 792. Dym and Gordon were both residents (domiciliaries) of New York. Gordon owned an automobile which was licensed, insured and regularly based (garaged) in New York. Gordon drove his automobile to Boulder, Colorado where he enrolled as a summer student at the University of Colorado. Dym went separately and without any prearrangement with Gordon to Boulder where she also became a summer student. On August 11, 1959 Dym drove with Gordon in his automobile, they intending to ride from Boulder to Longmont, another town in Colorado. On the trip, there was a collision between the car driven by Gordon and another car. Dym suffered injuries and after both returned to their homes in New York, she sued Gordon in New York on the theory that his negligence caused or contributed to her injuries. Colorado has a statute (Col.Rev.Stats. § 13–9–1) which denies liability by a host driver to a guest passenger except for "negligence consisting of a willful and wanton disregard of the rights of others". It was conceded that if this statute applied Dym could not recover because the negligence of Gordon was "ordinary negligence" (262 N.Y.S.2d at 464, 209 N.E.2d at 793). A bare majority of the Court of Appeals (Judges Dye, Burke, Van Voorhis and Scileppi) held that the law of Colorado applied. The minority (Chief Judge Desmond and Judges Fuld and Bergan) believed that New York law should apply. The majority professed to follow Babcock v. Jackson (in which Judge Van Voorhis and Judge Scileppi had dissented) but to find factual distinctions. In Babcock, only New York residents were involved in the accident; in Dym, there was a collision and the other car presumably was Colorado based and contained a Colorado resident or residents. The host-guest relationship was formed in New York in Babcock but in Colorado in Dym. The New Yorkers were in transit in Babcock whereas in Dym they "had come to rest" in Colorado and "had thus chosen to live their daily lives under the protective arm of Colorado law" (262 N.Y.S.2d at 467, 209 N.E.2d at 795). The accident in Dym "arose out of Colorado based activity" and thus the place of the accident was not "fortuitous" (262 N.Y.S.2d at 467, 209 N.E.2d at 794). The majority also

referred to the public policy of Colorado expressed by its statute as resting on three factors: protection against fraudulent (collusive) claims, prevention of suits by ungrateful guests, and establishment of a priority for injured persons in *other* cars against the negligent driver.

In the light of these decided cases, it seems reasonably clear to me that at least a majority of the New York Court of Appeals, and probably all of the judges of that Court, would apply the law of Brazil, including that part of Brazilian law limiting damages against an air carrier, to the case at bar.

Because of its relationship (geographical and otherwise) to the accident in the case at bar and to defendant as a Brazilian air carrier, Brazil "has the greatest concern with the specific issue raised in the litigation" (Babcock v. Jackson, 12 N.Y.2d at 481, 240 N.Y.S.2d at 749, 191 N.E.2d at 283), namely, the issue of limitation of liability. The contract between plaintiff and defendant was made in Brazil. The flight began in Brazil, was to end there, and did end there. (It has been suggested that where the relationship arises and the trip originates and ends in the same state, the law of that state will in every case be applied by the New York Courts. O'Rourke, A Numerical Evaluation of Babcock, 22 New York County Lawyers Association Bar Bulletin 220, 223 (1964–65).) At no time was defendant's plane over or even near New York. Plaintiff "had come to rest" (262 N.Y.S.2d at 467, 209 N.E.2d at 795) in Brazil even though his onward journey to Sao Paulo (not planned beforehand) began on the day of his arrival. The trip being made by plaintiff was occasioned by activities in Brazil—the operations of Honeywell's Brazilian subsidiary and plaintiff's participation in Brazil in those operations. That the place of the accident was Brazil was thus in no sense "fortuitous" (Kilberg, 9 N.Y.2d at 39, 211 N.Y.S.2d at 135, 172 N.E.2d at 527). Defendant is not a New York corporation; it is a thoroughly Brazilian corporation, owned by Brazilians, and conducts only very limited activities in New York. While it has been held liable to suit here (see also Bryant v. Finnish National Airline, 15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E.2d 439 (May 27, 1965)), its activities in New York relate entirely to the purchase of materials and not to the solicitation or even the encouragement of passenger business. Unlike Northeast (defendant in the Kilberg action), Cruzeiro (defendant here) does not deal with the public in New York and of course never dealt with plaintiff in New York. While plaintiff is a resident of New York, there is no likelihood of his becoming a public charge to affect the policy of this State; the accident in suit occurred in the course of his employment and he is covered by the Workmen's Compensation Law of New York. His employer is not a New York corporation. This is not a wrongful death case; the public policy of New York to which the majority in Kilberg referred was a public policy applicable to wrongful death cases. In any event, a public policy of New York does not appear to survive as a factor in choice of law after the Babcock and Dym decisions. See Long v. Pan American World Airways, Inc., 23 A.D.2d 386, 260 N.Y.S.2d 750 (1st Dept., June 22, 1965). Nothing has been submitted as to the Brazilian policy behind the statutory limitation of the liability of a Brazilian air carrier, but it is reasonable to suppose, as it has been judicially declared, that the statute is based on "Brazil's concern for the financial integrity of her local airlines" and was enacted "with a view toward protecting * * * an infant industry of extraordinary public and national importance". Tramontana v. S. A. Empresa etc. trading as Variq Airlines, 350 F.2d 468 (D.C.Cir. June 10, 1965). In the same opinion it is stated that a national airline to Brazil "is an object of concern in terms of national policy" and that the success of such an airline is to Brazil "a matter not only of pride

Thethe

---

and commercial well-being, but perhaps even of national security".

What the case at bar comes down to is that the *only* relationship or contact of New York is the fact that plaintiff is a resident of New York. Surely this is not enough, standing alone, to warrant the application of New York law to the issue of measure of damages.

■ It has been suggested that if the forum state has no interest in the application of its law while the state of the place of the conduct and injury does have such an interest, the law of the latter state should be applied. Currie, Comments on Babcock v. Jackson, 63 Col.L.Rev. 1233, 1242 (1963). New York seems to have no interest here. This is not a wrongful death action. The New York Workmen's Compensation Law covers plaintiff. Such law must embody the policy of New York so far as he is concerned and so far as concerns the prevention of his dependents from becoming public charges.

■ But if New York does have an interest in the application of its law because of the residence here of plaintiff, the contrary interest of Brazil in the issue involved (limitation of damages) seems clearly "the greater and more direct", "the strongest interest in the resolution of the particular issue presented" (Babcock v. Jackson, above, 12 N.Y.2d at 482, 484, 240 N.Y.S.2d at 752, 191 N.E.2d at 285).

For the reasons set out, the conclusion is that the law of Brazil as to the measure of damages must be applied. This means that summary judgment must go for defendant on the first claim. Accordingly, there is no occasion to consider the "act of State" contention advanced for defendant. See Professor Keeffe, Sequel to Kilberg, Pearson and Griffith, 51 A.B.A. Journal 789, 790 (1965).

■ There is an express determination that there is no just reason for delay and an express direction (Fed.R.Civ.P. 54(b)) that the Clerk enter final judg-

ment in favor of defendant dismissing the claim in the complaint contained in the count entitled "First Cause of Action".

So ordered.