Elaine ROSENTHAL, as executrix of the estate of Martin C. Rosenthal, Deceased, Plaintiff-Appellee,

v.

Kenneth W. WARREN, and New England Baptist Hospital, Defendants-Appellants.

No. 128, Docket 72–1658.

United States Court of Appeals, Second Circuit.

Argued Oct. 31, 1972.

Decided Feb. 13, 1973.

Solomon M. Cheser, New York City, for defendant-appellant Warren.

Douglas A. Boeckmann, New York City, for defendant-appellant New England Baptist Hospital.

Melvin I. Friedman, New York City (Kreindler & Kreindler, Gerald A. Robbie and Alan J. Konigsberg, New York City, of counsel), for plaintiff-appellee.

Before LUMBARD, FEINBERG and OAKES, Circuit Judges.

OAKES, Circuit Judge:

This appeal in a diversity case raises the question whether New York would apply a Massachusetts damage limitation to the death of a New York domiciliary occurring in Massachusetts. The appeal, taken before final judgment pursuant to 28 U.S.C. § 1292(b), is from an order of the district court granting partial summary judgment in favor of the plaintiff in an action for wrongful death, 342 F. Supp. 246. The partial summary judgment struck the affirmative defense based upon the Massachusetts wrongful death statute limiting recoverable damages to " . . . not less than five thousand nor more than fifty thousand dollars, to be assessed with reference to the degree of [the tortfeasor's] culpability . . . ."[1] The district court held that New York law was applicable. That law places no fixed value on wrongful death or limitation upon the damages in a wrongful death action. N.Y.Estates, Powers & Trust Law, McKinney's Consol.Laws, c. 17–b, § 5–4.3; N.Y.Const. art. 1, sec. 16. We affirm.

The relevant facts are simple, the legal issue difficult. The decedent, Dr. Martin C. Rosenthal, was a citizen of New York. Decedent and his wife, who as executrix is plaintiff here, went to Boston where he was examined and diagnosed by Dr. Warren, whom the plaintiff describes as a world-renowned physician and surgeon treating patients from all over the world. On March 27, 1969, eight days after an operation performed by Dr. Warren at the New England Baptist Hospital, decedent died in

---

1. Mass.Gen.L. ch. 229, § 2 (1959).

the hospital while under the care of the defendant Warren.

Suit, alleging malpractice and asking for $1,250,000 in damages, was brought in New York state court. Jurisdiction of Dr. Warren to the extent of his insurance coverage was obtained by attachment levied on the St. Paul Fire & Marine Insurance Company, a Minnesota corporation doing business in New York, the malpractice insurer of a clinic where Dr. Warren is employed.[2] Jurisdiction of New England Baptist Hospital, of which Dr. Warren is surgeon in chief, a trustee, a member of the planning committee and an officer of the corporation, was obtained by service upon another officer of the hospital while soliciting funds in New York City. Defendants removed the suit to the federal district court on the basis of diversity of citizenship.

It is undisputed that although the hospital is a Massachusetts corporation, approximately one-third of its patients in 1969 came from outside Massachusetts and approximately 8 per cent of its patients in the same year were from New York. Indeed, the hospital claimed in its 1969 annual report that it was "not a local or community hospital in the usual sense because its patients come from literally everywhere." An affidavit of the head of the casualty underwriting department of the Boston office of St. Paul Fire & Marine, which issued the liability policy under which defendant Warren was covered, indicates that a general surgeon's liability policy in Massachusetts has a basic limit premium of $192, while a New York City surgeon pays a basic limit premium of $1,139, and that one factor contributing to the difference is the "dollar exposure" in New York, which has no wrongful death limitation. Dr. Warren's policy, however, makes no reference to coverage limitation in wrongful death cases.

■■ This being a diversity case, it is, of course, elemental that we must look to the choice of law rules of the forum state, that is, to New York law. Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Patch v. Stanley Works, 448 F.2d 483, 487 (2d Cir. 1971). Formerly New York probably would have applied the law of Massachusetts under the simplistic rule of lex loci delicti. Baldwin v. Powell, 294 N.Y. 130, 61 N.E.2d 412 (1945); Whitford v. Panama Railroad Co., 23 N.Y. 465 (1861). *But cf.* Conklin v. Canadian-Colonial Airways, Inc., 266 N.Y. 244, 194 N.E. 692, Id., 242 App.Div. 625, 271 N.Y.S. 1107 (1935) (New Jersey death limitation inapplicable to a New Jersey plane crash because the validity of a ticket stipulation for limiting the airline's damages is to be determined by New York law, where the ticket was purchased).

In Kilberg v. Northeast Airlines, Inc., 9 N.Y.2d 34, 172 N.E.2d 526, 211 N.Y. S.2d 133 (1961), however, the New York Court of Appeals characterized the Massachusetts wrongful death limitation as "procedural" and refused to apply it in a suit brought in New York by a New York decedent's estate arising from the crash of an airplane flight originating in New York but fatally ending at Nantucket, Massachusetts. The court said that "[m]odern conditions make it unjust and anomalous to subject the traveling citizen of this State to the varying laws of other States through and over which they move," and pointed out that there were only 14 states limiting death case damages as of that time. 9 N.Y.2d at 39, 211 N.Y.S.2d at 135, 172 N.E.2d at 527. The court also characterized wrongful death recovery limitations as "absurb and unjust"[3] and emphasized

---

2. Jurisdiction was obtained under Seider v. Roth, 17 N.Y.2d 111, 269 N.Y.S.2d 99, 216 N.E.2d 312 (1966).

3. *See* Justice Hatch in Medinger v. Brooklyn Heights R. R., 6 A.D. 42, 46, 39 N.Y.S. 613, 616 (1896), *quoted in* Kilberg

the strong New York policy against such limitations, at least as to its domiciliaries, enshrined in a constitutional prohibition against them. Said the court, "The absurdity and injustice have become increasingly apparent in the six decades that have followed [the adoption of the New York constitutional prohibition]. For our courts to be limited by [the Massachusetts] damage ceiling (at least as to our own domiciliaries) is so completely contrary to our public policy that we should refuse to apply that part of the Massachusetts law . . . . " 9 N.Y.2d at 40, 211 N.Y.S.2d at 136, 172 N.E.2d at 528.

*Kilberg* foreshadowed New York's total break with the wooden rule that the law of the place of the tort inevitably governed. The break became complete in the landmark Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E. 2d 279 (1963), where the Court of Appeals chose to apply New York law even though a statute of the place of the tort foreclosed rather than merely limited liability. *Babcock* refused to apply an Ontario statute barring recovery by an automobile guest in the case of an automobile accident in Ontario in which the driver and passenger were New Yorkers. The opinion laid the foundation for an "interest analysis" approach to choice of law problems, looking to "the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties has the greatest concern with the specific issue raised in the litigation." 12 N.Y.2d at 481, 240 N.Y.S.2d at 749, 191 N.E.2d at 283. Carefully distinguishing what the court then considered was Ontario's legislative concern over guest-driver collusion against insurers from its interest in regulating the manner in which a driver operates his car, 12 N.Y.2d at 482–483, 240 N.Y. S.2d 750, 751, 191 N.E.2d at 284, and examining the relative importance of the relationships and contacts of the respective jurisdictions in light of " 'the relevant purposes of the tort rules involved,' " 12 N.Y.2d at 482, 240 N.Y.S.2d at 750, 191 N.E.2d at 284,[4] the *Babcock* court concluded that application of the inflexible rule of lex loci delicti could lead to "unjust and anomalous results." 12 N.Y.2d at 484, 240 N.Y.S.2d at 751, 191 N.E.2d at 285.

Analysis of the respective interests underlying the choice of law applicable in tort cases was soon explicitly extended to actions for wrongful death. *See* Long v. Pan American World Airways, Inc., 16 N.Y.2d 337, 266 N.Y.S.2d 513, 213 N.E.2d 796 (1965) (applying Pennsylvania law to an air crash where decedents were Pennsylvania residents but wreckage landed in Maryland). In Mill-

v. Northeast Airlines, Inc., 9 N.Y.2d 34, 40, 211 N.Y.S.2d 133, 136, 172 N.E.2d 526, 528 (1966). New York, it may be noted, was the first state in this country to enact a statute permitting recovery for wrongful death; it did so in 1847, one year before England adopted Lord Campbell's Act. *See* Salsedo v. Palmer, 278 F. 92, 94 (2d Cir. 1921). Ironically, Massachusetts has recently become the first state to hold that there *was* a common law right of recovery for wrongful death and that Lord Ellenborough's famous dictum to the contrary in Baker v. Bolton, 1 Campb. 493, 170 Eng.Rep. 1033 (1808), was erroneous. Gaudette v. Webb, Mass., 284 N.E.2d 222, 226–229 (1972).

4. The *Babcock* "interest analysis" approach has been adopted by other state courts in tort cases. *E. g.*, Beaulieu v. Beaulieu, 265 A.2d 610 (Me.1970); *see* Note,

Beaulieu v. Beaulieu: An Obituary for Lex Loci and an Approach to Interest Analysis, 23 Me.L.Rev. 239 (1971). *Babcock* was the first and is the leading case in the tort field. *See* Cavers, Cheatham, Currie, Ehrenzweig, Leflar & Reese, Comments on Babcock v. Jackson, A Recent Development in Conflict of Laws, 63 Colum.L.Rev. 1212 (1963). The New York courts have not followed, or at least have not articulated that they were following, the "Better Rule of Law" approach, first candidly advanced in Clark v. Clark, 107 N.H. 351, 355, 222 A.2d 205, 209 (1966), and used in Tiernan v. Westext Transp., Inc., 295 F.Supp. 1256, 1264 (D.R.I.1969); Conklin v. Horner, 38 Wis. 2d 468, 483–484, 157 N.W.2d 579, 586–587 (1968); and Zelinger v. State Sand & Gravel Co., 38 Wis.2d 98, 110–113, 156 N.W.2d 466, 471–473 (1968).

er v. Miller, 22 N.Y.2d 12, 290 N.Y.S.2d 734, 237 N.E.2d 877 (1968), the New York Court of Appeals faced the question whether to apply a Maine $20,000 limit on wrongful death recovery in the case of a New York resident killed in Maine while a passenger in an automobile driven by a Maine resident. Again the court emphasized the strong New York policy against wrongful death limitations and saw "no substantial countervailing considerations" which would warrant the rejection of New York law, pointing out that the Maine statute did not "regulate conduct" and that "the only justifiable reliance which could be present here would involve the purchase of liability insurance in light of the remedies available to an injured person." 22 N.Y.2d at 19, 290 N.Y.S.2d at 740, 237 N.E.2d at 881. But the court pointed out that standard automobile liability policies issued in Maine drew no distinction between liability coverage for wrongful death and personal injuries, 22 N.Y.2d at 20, 290 N.Y.S.2d at 740, 237 N.E.2d at 881, so that it could not have been purchased in reliance on the Maine wrongful death limitation.

Similarly, in Tooker v. Lopez, 24 N.Y. 2d 569, 301 N.Y.S.2d 519, 249 N.E.2d 394 (1969), the New York Court of Appeals refused to apply a Michigan guest statute in the case of an automobile accident which occurred on an intra-Michigan trip taken by two New York coeds at Michigan State, one the driver and the other the decedent passenger. Relying upon Miller v. Miller, *supra,* the court "rejected unequivocally" "[t]he argument that the choice of law in tort cases should be governed by the fictional expectation of the parties." 24 N.Y.2d at 577, 301 N.Y.S.2d at 526, 249 N.E.2d at 399. *Tooker* not merely questioned, it

for all practical purposes overruled, Dym v. Gordon, 16 N.Y.2d 120, 125, 262 N.Y. S.2d 463, 467, 209 N.E.2d 792, 794 (1965), insofar as *Dym* (purporting to rely on *Babcock*) had held that the law of the state with the "most significant relationship to the parties" was to govern. *Tooker* rather looked to the law of the state with the "superior interest" in having its policy or law applied. *See* 24 N.Y.2d at 574, 301 N.Y.S.2d at 523, 194 N.E.2d at 397. *Tooker* also criticized Macey v. Rozbicki, 18 N.Y.2d 289, 274 N.Y.S.2d 591, 221 N.E.2d 380 (1966), which, relying on other language of *Babcock,* had seemingly adopted a "contact counting" rather than an "interest analysis" approach to choice of law problems. 24 N.Y.2d at 575, 301 N.Y.S.2d at 524, 194 N.E.2d at 398.

The most recent conflict of laws tort case to reach the New York Court of Appeals, Neumeier v. Keuhner, 31 N.Y. 2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454, (1972), did hold the Ontario guest law applicable in a suit by an *Ontario* decedent's executrix against a New York driver's estate arising from an accident in Ontario, the court saying that New York has "no legitimate interest in ignoring the public policy of [the] foreign jurisdiction . . . and in protecting the plaintiff guest domiciled and injured there from legislation obviously addressed, at the very least, to a resident riding in a vehicle traveling within its borders." 31 N.Y.2d at 125–126, 335 N. Y.S.2d at 68, 286 N.E.2d at 456. In no way, however, did the court retreat from the position it had staked out in *Kilberg* and *Miller,* refusing to apply other states' wrongful death limitations in the case of the death of a *New York* domiciliary.[5]

---

5/ The *Neumeier* court did not fail to note that if it had been a *New York* domiciliary who was injured, "New York has a deep interest in protecting *its own residents,* injured in a foreign state, against unfair or anachronistic statutes of that state . . . ." 31 N.Y.2d at 125, 335 N.Y.S. 2d at 68, 286 N.E.2d at 456 (emphasis added). In fact, when serving as forum

for tort litigation in which it is not the domicile of the decedent or his beneficiaries, New York has still generally applied the law of the decedent's domicile on the issue of the extent of liability. *See* Thomas v. United Airlines, Inc., 24 N.Y. 2d 714, 301 N.Y.S.2d 973, 249 N.E.2d 755, cert. denied, 396 U.S. 991, 90 S.Ct. 484, 24 L.Ed. 453 (1969) (Illinois death

Seeking to divine New York conflicts law, the federal courts of New York have not always been totally consistent in refusing to apply damage limitations of other states against New York decedents. Two federal cases which did refuse to do so arose out of the same Nantucket crash involved in *Kilberg*. Pearson v. Northeast Airlines, Inc., 309 F.2d 553 (2d Cir. 1962) (en banc), cert. denied, 372 U.S. 912, 83 S.Ct. 726, 9 L. Ed.2d 720 (1963), held that the *Kilberg* rule was "a proper exercise of [New York's] power to develop conflict of laws doctrine" and not contrary to the full faith and credit clause, U.S.Const. art. IV, § 1, or the due process clause.

Gore v. Northeast Airlines, Inc., 373 F.2d 717 (2d Cir. 1967), followed the *Kilberg* holding even though the widow and infant children survivors of a New York decedent moved to Maryland a month after the accident and the decedent's adult children lived at all times in California.

In Ciprari v. Servicos Aereos Cruzeiro, 245 F.Supp. 819 (S.D.N.Y.1965), aff'd per curiam, 359 F.2d 855 (2d Cir. 1966), however, a Brazilian limitation of damages for personal injuries was held

to control in the case of a New York domiciliary who bought his ticket in Brazil for an intra-Brazilian trip in a Brazilian airliner. Both the district court, 245 F.Supp. at 824–825, and the court of appeals, which affirmed on the district court's opinion, *see also* 359 F.2d at 856 (Waterman, J., concurring), relied heavily on Dym v. Gordon, *supra*, since questioned and in substance overruled in Tooker v. Lopez, *supra*, and held Brazil to be the jurisdiction most significantly concerned with the law suit.[6]

This review of the relevant case law[7] leaves us with the overwhelming conclusion that, except for a federal case which relied heavily on a discredited state case, the strong New York public policy against damage limitations has triumphed over the contrary policies of sister states in every case where a New York domiciliary has brought suit. This conclusion is particularly striking in wrongful death actions where the New York policy, embedded in a state constitutional prohibition against damage limitations, has without exception been applied in suits brought for New York decedents since *Kilberg*. One might well inquire whether it would be anomalous

action limitation held not to apply to New Jersey, Connecticut and Iowa domiciliaries killed in an Illinois plane crash). *Cf.* Long v. Pan American World Airways, Inc., 16 N.Y.2d 337, 266 N.Y.S.2d 513, 213 N.E.2d 796 (1965) (Pennsylvania wrongful death statute applied on behalf of a Pennsylvania decedent not survived by spouse, parent, child or dependent even though Maryland was situs of fatal plane crash and its law barred recovery). *See also* Manos v. Trans World Airlines, Inc., 295 F.Supp. 1170, 1173 (N.D.Ill.1969) ("The predominant interests to be served on the issue of damages are those of the states containing the people or estates which will receive the recoverable damages, if any, for their injuries or their decedent's death"), *quoted with approval*, Thomas v. United Airlines, Inc., *supra*, 24 N.Y.2d at 724, 301 N.Y.S. 2d at 979, 249 N.E.2d at 759–760.

6. *Ciprari* is also factually distinguishable from this case for, as the district court noted:

This is not a wrongful death case; the public policy of New York to which the

majority in Kilberg referred was a public policy applicable to wrongful death cases.

245 F.Supp. at 824. Furthermore, New York's interest in assuring adequate compensation to the *Ciprari* plaintiff was somewhat minimized as he had some recovery for his injuries under New York workmen's compensation law, 245 F.Supp. at 825.

7. New York lower courts have similarly refused to apply out of state limitations to limit recovery for the wrongful deaths of New York domiciliaries. *See* MacKendrick v. Newport News Shipbuilding & Dry Dock Co., 59 Misc.2d 994, 302 N.Y.S.2d 124 (Sup.Ct.1969) (New York domiciliary resident in Virginia three months killed in a Virginia industrial accident). *Accord*, Palmer v. Hertz Corp., 36 A.D.2d 252, 319 N.Y.S.2d 949 (1971); Tjepkema v. Kenney, 31 A.D.2d 908, 298 N.Y.S.2d 175, appeal denied, 24 N.Y.2d 942, 302 N.Y.S.2d 580, 250 N.E.2d 68 (1969); Tickel v. Oddo, 66 Misc.2d 386, 320 N.Y.S.2d 268 (Sup.Ct.1971).

to permit Dr. Rosenthal's heirs to recover without damage limitation if he died in a plane crash en route to Boston's Logan International Airport (*Kilberg*) or in a taxicab from Logan to New England Baptist (*Miller*) but not once he stepped into the hospital itself. But to do so would substitute "a domiciliary conceptualism that rested on a vested right accruing from the fact of domicile," Miller v. Miller, *supra,* 22 N.Y.2d at 29, 290 N.Y.S.2d at 748, 237 N.E.2d at 887 (dissenting opinion), for New York's sophisticated "interest analysis" approach to choice of law problems. The New York precedents require more.

Appellants contend that Massachusetts is the situs of the events leading to this law suit and, in effect, that the intent, either actual or constructive, of the parties was for the Massachusetts limitation on damages to govern in the event of a malpractice claim. This argument fails for many reasons. Quite probably it never occurred to Dr. Rosenthal, Dr. Warren or to the New England Baptist Hospital that a choice of law problem would arise; at least one does not ordinarily think of wrongful death limitations even when undertaking surgery. This is not a case where the conduct of the Massachusetts doctor or hospital vis a vis the decedent was patterned upon the Massachusetts death limitation. It is therefore not unfair to apply New York's compensatory policy to them. *Cf.* Babcock v. Jackson, *supra,* 12 N.Y.2d at 483, 240 N.Y.S.2d at 750–751, 191 N.E. 2d at 284. Additionally, it cannot be said that the defendants purchased insurance with the expectation Massachusetts law would govern damage recovery in this case. As in Miller v. Miller, *supra,* the specific insurance policy here does not distinguish between liability coverage for wrongful death and personal injuries, nor does it distinguish between medical practice on Massachusetts and out of state citizens. Finally, neither the hospital not the doctor named here as defendants operate provincially; the doctor has a world-wide following and the hospital actively solicits funds from outside the Commonwealth of Massachusetts (including New York) and treats patients from "literally everywhere." It is thus impossible to say with any certainty what the parties' actual "expectations" as to choice of law were.

Even if expectations, real or constructive, could be hypothesized, they would be legally irrelevant. Despite the argument that looking to the expectations of the parties to solve choice of law problems promotes " 'an unconscious acceptance of legality and [the] legal order,' " Miller v. Miller, *supra,* 22 N.Y.2d at 28, 290 N.Y.S.2d at 747, 237 N.E.2d at 886 (dissenting opinion), this contractual type of approach to multistate tort problems has been "summarily rejected" by the New York Court of Appeals. Tooker v. Lopez, *supra,* 24 N.Y. 2d at 577, 301 N.Y.S.2d at 526, 249 N. E.2d at 399; Miller v. Miller, *supra,* 22 N.Y.2d at 20, 290 N.Y.S.2d at 741, 237 N.E.2d at 881; *see also* D. Cavers, The Choice of Law Process 119, 302 (1965); Traynor, Conflicts of Law in Time, 1967 Duke L.J. 713, 715. It is not without significance in this regard that the "adventitious" element in airline crash cases, mentioned in *Kilberg* and other New York airline crash cases, was given little or no weight in *Miller* and *Tooker*. Looking to the supposed expectations of the parties smacks heavily of the "counting of contacts" approach to conflicts applied in Macey v. Rozbicki, *supra,* but disavowed in *Tooker*.

Rather, as we view it, the New York courts would balance against the New York interest in protecting its domiciliaries against wrongful death limitations the interests of Massachusetts in limiting damages for wrongful deaths allegedly caused by Massachusetts citizens or occurring in Massachusetts. Consideration of Massachusetts' interests in this case should, however, be from the perspective that the damage limitation is not confined to wrongful deaths resulting from medical malpractice but applies to all wrongful deaths however caused. Thus, any interest

Massachusetts has in keeping medical liability insurance premiums down so as to avoid passing the increased costs on to Massachusetts citizens in the form of higher medical fees is simply one facet of whatever larger interest it may have in limiting in death as distinguished from personal injury cases the size of damage recovery against its citizens generally.[8] *See* Tiernan v. Westext Transport, Inc., 295 F.Supp. 1256, 1264 (D.R.I.1969).

That interest we think the New York courts would say is one not based upon logic, reason or social policy, but is really the vestigial remains of the mistaken view that there was no common law action for wrongful death. We say "mistaken," for Massachusetts has only recently held precisely that, as of now, "the right to recovery for wrongful death is of common law origin . . . .," Gaudette v. Webb, Mass., 284 N.E.2d 222, 229 (1972), relying upon the late Mr. Justice Harlan's landmark opinion in Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970) (wrongful death action lies under general maritime law for death caused by violation of maritime duties). In any event, it is our considered view that the New York Court of Appeals would view the Massachusetts limitation, in the words of Justice Hatch (note 3 *supra*), as so "absurd and unjust" that the New York policy of fully compensating the harm from wrongful death would outweigh any interest Massachusetts has in keeping down in this limited type of situation the size of verdicts (and in some cases insurance premiums). If as *Kilberg* pointed out, "The absurdity and injustice [of wrongful death recovery limitations] have become increasingly apparent [since 1894] . . . . ," 9 N.Y.2d at 40, 211 N.Y.S.2d at 136, 172 N.E.2d at 528, since *Kilberg* they have become even more so. Since *Kilberg*, a number of states have repealed their wrongful death limitations or increased the amounts so that at the present time there are only seven which have an outright limit,[9] although some jurisdictions place a limit on a component of the damages[10] and various states impose a limit in suits against certain governmental bodies.[11] Indeed, Massachusetts itself recently increased its limits.[12] Our examination indicates that Massachusetts is unique, moreover, in both imposing minimum and maximum damage

8. If this case presented the converse fact situation where the decedent was a Massachusetts domiciliary and defendant doctor and hospital New York based, it is by no means clear a New York court would apply the Massachusetts wrongful death limitation. For, in addition to its interest in providing adequate compensation to those New York domiciliaries who suffer a wrongful demise, the unlimited nature of the possible recovery in New York can be said to deter resident doctors and medical facilities from acts of malpractice. Thus, New York would have an interest in regulating the conduct of the tortfeasors and "it would be almost unthinkable to seek the applicable rule in the law of some other place." Babcock v. Jackson, 12 N.Y.2d 473, 483, 240 N.Y.S.2d 743, 751, 191 N.E.2d 279, 284 (1962).

9. *See* Colo.Rev.Stat. Ch. 41, art. 1 § 3 (1963) ($45,000 limit if decedent left no dependent relative; otherwise unlimited recovery); Kan.Stat.Anno., ch. 60, § 1903 (1970) ($50,000 limit); Mo.Rev.Stat. § 537.090 (1966) ($50,000 limit); N.H.

Rev.Stat.Anno., ch. 556, § 13 (1971) ($30,000 unless decedent left a relative in which case the limit is $120,000); Va. Code, § 8-636 (1968) ($25,000 limit if no evidence of pecuniary loss to the survivors; $75,000 limit if there is such evidence plus funeral and medical expenses of deceased); Michie's West Va. Code, ch. 55, art. 7 § 6 (1965) ($10,000 limit if no evidence of pecuniary loss to the dependent survivors; $110,000 limit if there is such evidence).

10. *E. g.*, Michie's Md.Code, art. 93 § 4-401 (n) (1971) ($2,000 limit on recovery for funeral expenses); Wis.Stat. § 895.04 (1971) ($5,000 limit on recovery for loss of consortium).

11. *E. g.*, S.C.Code of Laws, tit. 33, § 926 (1962) ($5,000 limit for wrongful death action against a county based on defectively maintained roads).

12. *See* 7A Mass.Anno.Laws ch. 229, § 2 (Supp.1971) ($5,000 to $100,000 limits depending on tortfeasor's degree of culpability).

limitations and assessing damages in proportion to the degree of the wrongdoer's culpability.[13] Thus, the "absurdity and injustice" of death recovery limitations in general is heightened insofar as Massachusetts is concerned, because it relates damages recoverable not to the damages sustained, but to the degree of culpability, however that can be measured, on the part of the defendant.[14] A respected, famous surgeon like Dr. Warren might well be held liable, were the Massachusetts statute applicable, for only $5,000 in damages, regardless of the damages sustained by the decedent's survivors. Thus the anachronistic concept [15] embodied in the Massachusetts act is hardly one that the New York courts can be expected to embrace in the case of the death of a New York domiciliary with whose wife and children New York is "vitally concerned . . . ." Miller v. Miller, *supra,* 22 N.Y.2d at 18, 290 N.Y.S.2d at 739, 237 N.E.2d at 880. The New York policy favors "a just recovery" and "principles of fair play," MacKendrick v. Newport News Shipbuilding & Dry Dock Co., 59 Misc.2d 994, 1011, 302 N.Y.S.2d 124, 140–141 (S.Ct.1969), that is to say, the "just, fair and practical result." Neumeier v. Kuehner, *supra,* 31 N.Y.2d at 127, 335 N.Y.S.2d at 69, 286 N.E.2d at 457, which would not be furthered by applying the idiosyncratic Massachusetts law here. Our educated guess as to what the New York courts would do is to follow *Kilberg* and *Miller* and the teachings of *Long,* and apply the New York law of damages.

The constitutional argument, skillfully set forth in the dissent, was not raised by the parties below or on this appeal. We believe that in this case, like Pearson v. Northeast Airlines, Inc., 309 F.2d 553 (2d Cir. 1962) (en banc), cert. denied, 372 U.S. 912, 83 S.Ct. 726, 9 L.Ed. 2d 720 (1963), New York has a significant interest—its domiciliary is the one who died and his next of kin are New York's charges—and the "incident" in Massachusetts is not purely "a local one," *id.* at 561, since the decedent was from out of state, and the defendant hospital is a national one in terms of its patients, its staff, its reputation and its efforts to obtain out-of-state contributions. In these circumstances, the refusal by New York to apply the Massachusetts death act's qualitative and quantitative limitations, even as it applies the remainder of the death act, is not so unreasonable as to violate the full faith and credit clause, 309 F.2d at 561; *see* Currie, The ·Constitution and the Choice of Law: Governmental Interests and the Judicial Function, 26 U.Chi.L. Rev. 9, 13–15, 75 (1958); 63 Colum.L. Rev. 133, 141–44 (1963). Compare Home Insurance Co. v. Dick, 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926 (1930). The fact that Massachusetts was the situs of the tort and the residence of the defendant would not be sufficient to require as a matter of full faith and credit that the limitations in the Massachusetts law control, in light of the very strong New York policy against wrongful death limitations in connection with its citizens and next of kin and in light of the

---

13. Alabama assesses damages in proportion to the culpability of the tortfeasor but has no limit on maximum recovery. *See* S. Speiser, Recovery for Wrongful Death 71 (1966).

14. After all, as Mr. Justice Reed said in American Stevedores, Inc. v. Porello, 330 U.S. 446, 460, 67 S.Ct. 847, 854, 91 L.Ed. 1011 (1947), "Death is the supreme personal injury." Nevertheless, in Massachusetts,

> Whatever [the] variances now are or in the past have been, all the [Massachusetts] death statutes have this com-

mon, uniform and unaltered characteristic that the amount recoverable is fixed, not on the theory of compensating the surviving relatives of the deceased, but solely on the basis of the quantity of guilt of the defendant under the circumstances of the killing.

Porter v. Sorell, 280 Mass. 457, 460, 182 N.E. 837, 838 (1932).

15. "If a man destroy the eye of another man, they shall destroy his eye." R. F. Harper, The Code of Hammurabi, King of Babylon § 196 (2d ed. 1904).

interstate aspects of the transaction. *Pearson* established that the Massachusetts death statute could be constitutionally sued upon in New York absent its penal quality and its damage limitations. Given a legitimate forum state interest —as is here present—we see no *constitutional* difference between death on the *Pearson* airplane, death in a taxicab on the way from the airport and death on the operating table.

We agree with the court below and affirm the judgment.

LUMBARD, Circuit Judge (dissenting):

The majority has concluded that the New York courts, on the facts of this case, would refuse to apply the Massachusetts wrongful death damage limitation. Accordingly, it has held that the federal district court, sitting in diversity, correctly refused to apply the Massachusetts damage limitation. From this holding I must dissent both because I do not agree that this a proper appraisal of applicable New York law and because I believe that the full faith and credit clause of the United States Constitution bars the New York courts, and federal district courts sitting in diversity, from refusing to apply the Massachusetts limitation on the facts of this case.

In effect, the majority has concluded that, as a matter of policy, the New York courts would decline to apply such a damage limitation when the plaintiff, or the decedent, is a New York resident. Although such a *per se* rule would be consistent with the dictum of the New York Court of Appeals in Kilberg v. Northeast Airlines, 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526 (1961), it flies in the face of the interest-analysis approach to conflict of laws issues later embraced by that court in Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1966), and subsequent decisions. As this court noted in Gore v. Northeast Airlines, 373 F.2d 717, 723 (1967), these later decisions

"have created doubts as to the continued validity of the *Kilberg* doctrine in New York despite citations approving its vitality in the opinions in these cases." Indeed, these subsequent cases have sought to cast *Kilberg* in an interest-analysis light, and have cited the minimal interest that Massachusetts, in that case, had in the application of its law, in light of the mere fortuity that the airplane there happened to crash in Massachusetts, in contrast with the more substantial New York interest based on the facts that the journey during which the mishap occurred began in New York, the ticket was purchased in New York, and plaintiff and decedent were both New York residents.

The majority purports to decide this case on interest-analysis grounds. However, the sole interest that it has found in New York emanates from the facts of plaintiff's and decedent's New York residence. Such an analysis simply proves too much; for it is tantamount to a *per se* rule that the courts will not apply such foreign damage limitations when the plaintiff is a resident of the forum state. Thus, I believe the majority's approach amounts to an insupportable abandonment of interest-analysis principles with regard to foreign damage limitations.

Appellee has correctly noted that the New York courts have never honored a foreign damage limitation such as that in issue. However, it is also true that the New York courts have never considered a case in which the interests of New York, in relation to those of the foreign state, were as minimal as they are here. The incident at the root of this litigation, the alleged malpractice of Dr. Warren, does not have the inter-state flavor of the *Kilberg* facts—death caused while in transit from one state to another. Here the decedent made a deliberate choice to undergo the operation in Massachusetts at defendant hospital. Hence, he journeyed into Massachusetts and registered in defendant hospital

where he was under the care of defendant, Dr. Warren. The alleged negligence that resulted in decedent's death, the operation by Dr. Warren, occurred wholly within Massachusetts under the care of Massachusetts residents and in a Massachusetts institution. New York's only connection with this occurrence was the patient's permanent residence in New York. I do not see that New York's interest in this occurrence is enhanced by the fact that this Massachusetts physician and Massachusetts institution have such an eminent reputation that a substantial number of their patients, many from New York, are not Massachusetts residents and choose to come into Massachusetts and undergo treatment there; for there is no evidence that either defendant solicited patients from outside Massachusetts— their popularity is due solely to their reputation and the choice of the individual patients.

In my opinion the Massachusetts interests and contacts with the occurrence underlying this litigation should predominate. In addition to its interest in protecting its citizens and institutions from excessive recoveries, an important consideration behind the Massachusetts limitation is its policy of keeping liability premiums as low as possible for its residents. The significant differential that the majority has noted between malpractice insurance premiums in New York and those in Massachusetts is some testimony to the success of this policy. This interest of Massachusetts is fortified by the fact that the insurance policy from which any recovery will be paid was issued in Massachusetts. The fact that the policy has no coverage limitation in wrongful death cases, as noted by the majority, is irrelevant; for the difference in premiums makes it clear that the Massachusetts damage limitation is considered by insurance companies in calculating premiums for liability insurance issued in Massachusetts. Therefore, if we are to take the New York courts at their word that they follow an interest-analysis approach to torts conflict of laws problems, I can see no escape from the conclusion that Massachusetts interests predominate here and that the New York Court would on these facts be impelled to apply the Massachusetts damage limitation.

This court, in Ciprari v. Servicos Aereos Cruzeiro, affirming 359 F.2d 855 (1966), 245 F.Supp. 819 (S.D.N.Y., 1965), had occasion to consider whether the New York courts would apply a foreign damage limitation in a case in which the interests of the foreign state were substantial. We held that the damage limitation was applicable. The majority, however, suggests that *Ciprari* is no longer correct because that case relied on Dym v. Gordon, 16 N.Y.2d 120, 262 N.Y.S.2d 463, 209 N.E.2d 792 (1965), which has since been substantially discredited. See Tooker v. Lopez, 24 N.Y.2d 569, 301 N.Y.S.2d 519, 249 N.E.2d 394 (1969). But a reading of *Ciprari* reveals that the court there relied on the entire line of cases developing the interest-analysis approach in New York, and that *Dym*, as then the most recent case in that line, was only one of many cases cited. And, in fact, the interests of the foreign state relative to those of New York were even greater in *Ciprari* than in *Dym*. Therefore, in the absence of any criticism of our *Ciprari* holding by the New York Court of Appeals, I would not abandon our analysis in that case, as the majority appears to do, and would reach the same conclusion we reached in *Ciprari* —that the New York Court would apply the foreign damage limitation.

In any event, even if the majority were correct that the New York courts would refuse to apply the Massachusetts damage limitation against a New York plaintiff, I would hold that such an approach, when applied to a case in which the contacts with Massachusetts are as great as they are here, violates the full faith and credit clause of the United States Constitution. In Pearson v. Northeast Airlines, 309 F.2d 553 (en banc) (1962), cert. den. 372 U.S. 912, 83 S.Ct. 726, 9 L.Ed.2d 720 (1962), this cir-

cuit held that "the ruling of the New York Court of Appeals in Kilberg was a proper exercise of the state's power to develop conflict of laws doctrine." (p. 556). Thus, there was no breach of the full faith and credit clause when the New York Court ignored the Massachusetts damage limitation on the *Kilberg* facts. However, the majority in *Pearson* explicitly recognized that, in a case in which the Massachusetts interests were greater relative to the New York interests, it would be a constitutional violation for the New York courts to refuse to honor the foreign damage limitation. In this regard, Judge Kaufman wrote for the majority:

> We may concede that the Wrongful Death Statute of Massachusetts, almost certainly designed with an eye toward the regulation of occurrences transpiring · wholly within Massachusetts, should be honored fully and completely when the incident under litigation is a local one. Such, we take it, is the import of Home Insurance Co. v. Dick (citation omitted). But we cannot concede that Massachusetts has a constitutionally protected claim to the unqualified application of its statute in cases where there is an overwhelmingly interstate flavor. (p. 561).

I cannot see how the alleged malpractice and subsequent death of plaintiff's decedent can be classified as anything other than a local incident. Therefore, it appears to me that the clear import of this court's language in *Pearson* is that, in a case such as that presently before us, the full faith and credit clause would mandate the New York courts to apply the Massachusetts Wrongful Death Statute in its entirety, including the damage limitation. Hence, even if the majority and the district court are correct in their appraisal of New York law, the district court was nevertheless in error in refusing to apply the Massachusetts damage limitation to this case.

Accordingly, I would reverse the order of the district court.