Arnold **HAYDU**, Widower and Executor under the Last Will and Testament of Justine B. Haydu, also known as Justine Briel Haydu, deceased, Plaintiff,

v.

**HOSPITAL FOR JOINT DISEASES ORTHOPAEDIC INSTITUTE,** Beth Israel Medical Center, Reuben Hoppenstein, David Present, Harvey Lozmen, R. Harf, Andrew J. Werner, Adam Greenspan and Lester Rose, Defendants.

No. 81 Civ. 1872(MEL).

United States District Court,
S.D. New York.

March 1, 1983.

Goldsmith & Tabak, P.C., New York City, for plaintiff; T. Lawrence Tabak, New York City, of counsel.

Curtis, Mallet-Prevost, Colt & Mosle, New York City, for defendant Reuben Hoppenstein, M.D.; Robin E. Eichen, New York City, of counsel.

LASKER, District Judge.

This action for wrongful death arises from alleged medical malpractice of defendants in their treatment of Justine Haydu. Haydu, a long time resident of Connecticut, began to consult with Dr. Reuben Hoppenstein, a New York resident and practitioner, in June, 1979 concerning her back problems. Dr. Hoppenstein recommended surgery, and on July 19, 1979, Haydu underwent surgery at the Hospital for Joint Diseases Orthopaedic Institute in New York City. Later that day, Haydu was treated at the Beth Israel Medical Center, and, on the morning of July 20, 1979, she died.

Haydu's estate was admitted to probate in Connecticut, where her widower and children continue to reside.

Dr. Hoppenstein moves in limine for a ruling that New York law is applicable to the issue of damages. Arnold Haydu, the widower and executor of the estate of Justine Haydu, cross-moves for a ruling that Connecticut law is applicable.

Haydu argues that in wrongful death actions, the New York courts, whose conflicts of laws rules are binding on the Court in this diversity action, universally apply the damages rules of the state of the decedent's domicile. New York employs an "interest analysis" approach to conflicts questions in tort actions, and Haydu contends, the dominant interest in a wrongful death action, as recognized by the New York courts, is the interest of the state which will be responsible for the administration of the decedent's estate and the protection and care of the surviving family members.

Hoppenstein answers that New York is the state with the predominant interest because New York is concerned with limiting the liability of the defendants, all of whom are New York residents. Hoppenstein does not dispute Haydu's contention that most of the New York cases which have considered the question have in fact applied the law of the decedent's domicile. However, Hoppenstein distinguishes the cases relied on by Haydu on the grounds that (a) in most of those cases, the *plaintiffs* were New York residents, and New York's interest is in protecting its residents, regardless of whether they are plaintiffs or defendants; and (b) many of the cases utilized New York law on the grounds that the law of the other state in question was deemed by the New York courts to be against New York's public policy.

\* \* \*

■ Under *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), a federal court adjudicating a diversity action applies the conflicts of laws rules utilized by the state in which the court sits. The New York conflicts rules look to the state which has the "superior interest" in the application of its laws to the issue at stake. *See Rosenthal v. Warren,* 475 F.2d 438, 442 (2d Cir.), *cert. denied,* 414 U.S. 856, 94 S.Ct. 159, 38 L.Ed.2d 106 (1973) *citing Tooker v. Lopez,* 24 N.Y.2d 569, 301 N.Y.S.2d 519, 249 N.E.2d 394 (1969).

■ Both Connecticut's interest in obtaining relief for its residents and New York's interest in limiting the liability of its doctors and hospitals are substantial. *See Rosenthal, supra,* 475 F.2d at 444. Although the superior interest test has undergone substantial development in wrongful death cases, no case has been found in which a New York court has determined whether New York's interest in limiting its residents' liability outweighs a sister state's interest in obtaining relief for its residents.

Hoppenstein is correct in noting that several of the leading cases have focused on New York's refusal to utilize a sister state's

law which New York deemed anachronistic. Although Hoppenstein asserts that Connecticut's law is anachronistic, he provides no reason for his assertion, nor is any support found in the case law. The laws which have been held to be anachronistic have involved limitations on wrongful death damages based on the "vestigal remains of the mistaken view that there was no common law action for wrongful death." *Rosenthal, supra,* 475 F.2d at 445. Connecticut's rule, that damages in wrongful death actions are not limited to destruction of the deceased's earning capacity, is not a limitation on liability. While Connecticut's rule is different from New York's, there is no basis for the contention that application of the rule would violate New York's public policy that damage awards in wrongful death cases should not be limited to an arbitrary maximum.

Acknowledging the difficulty of predicting the decision which would be reached by another court, we believe that New York would find Connecticut's interest to be the greater. First, while it is true that the New York wrongful death conflicts cases can be distinguished on various grounds, the pattern of application of the law of the decedent's domicile appears to be unbroken. *See Rosenthal, supra,* 475 F.2d at 442 n. 5 and the cases cited therein. ("In fact, when serving as forum for tort litigation in which it is not the domicile of the decedent or his beneficiaries, New York has still generally applied the law of the decedent's domicile on the issue of the extent of liability.")

Moreover, the New York courts have commented frequently on the weight of the interests of the plaintiff's home state. *See, e.g., Thomas v. United Air Lines, Inc.,* 24 N.Y.2d 714, 724, 301 N.Y.S.2d 973, 979, 249 N.E.2d 755, 759 (1969) ("The predominant interests to be served on the issue of damages are those of the states containing the people or estates which will receive the recoverable damages, if any, for their injuries or their decedent's death'"); *Miller v.*

*Miller,* 22 N.Y.2d 12, 18, 290 N.Y.S.2d 734, 739, 237 N.E.2d 877, 880 (1968) ("this State is vitally concerned with the manner in which the wife and children of a New York decedent will be compensated for the economic loss they have suffered as a result of the wrongful killing of their 'bread winner.'"); *Long v. Pan American World Airways, Inc.,* 16 N.Y.2d 337, 341, 266 N.Y.S.2d 513, 516, 213 N.E.2d 796, 798 (1965); *Rosenthal v. Warren, supra,* 475 F.2d at 446 ("New York has a significant interest—its domiciliary is the one who died and his next of kin are New York's charges"); *Holzsager v. Valley Hospital,* 482 F.Supp. 629, 635 (S.D.N.Y.1979), *rev'd on other grounds,* 646 F.2d 792 (2d Cir.1981) ("The state in which a plaintiff currently resides is the state that may have to shoulder the burden of providing care and assistance to the plaintiff in the event full compensation cannot be obtained from a tortfeasor. Clearly that state has an interest in ensuring that full compensation be paid").

By contrast, the New York courts have paid scant attention to the interests of the defendant's home state. In *Long v. Pan American World Airways, supra,* for example, the state of Pan Am's incorporation and principal place of business was New York. However, the Court of Appeals stated that Pan Am had "no cause to complain about being held responsible for the consequences flowing under Pennsylvania law," because it had solicited passengers in Pennsylvania, and flew in and out of Philadelphia. 16 N.Y.2d at 342, 266 N.Y.S.2d at 516, 213 N.E.2d at 798. While the interstate contacts of a hospital are less than those of a national airline, they are not entirely dissimilar. The Court can take judicial notice of the fact that it is not uncommon for residents of adjacent states to seek medical care in New York City, and that New York's large and nationally known hospitals and their practitioners, like New York airline carriers, have no reasonable expectation that any particular patient (or passenger) will be a New York domiciliary.[1]

---

1. Similarly, in *O'Connor v. Lee-Hy Paving Corp.,* 579 F.2d 194 (2d Cir.), *cert. denied,* 439 U.S. 1034, 99 S.Ct. 639, 58 L.Ed.2d 696 (1978),

Judge Friendly, applying New York's choice of laws rules, held that the law of New York, the state of the decedent's domicile, was applicable

Finally, we reject the proposition that New York's choice of law rule is to apply its own law to protect its residents, using the more generous law only where the New York resident is the plaintiff, and the more restrictive law where the New York resident is the defendant.

In the first place, no New York court has articulated such a view of New York choice of laws. To the contrary, the New York courts have repeatedly stated that they apply the law of the state which has "the superior interest in having its policy or law applied." *Tooker v. Lopez,* 24 N.Y.2d 569, 574, 301 N.Y.S.2d 519, 523, 249 N.E.2d 394, 397 (1969). In fact, responding to the dissent's assertion that New York courts always apply New York law, the majority in *Tooker* stated that New York conflicts rules have "indicated proper recognition and respect for the legitimate concerns of other jurisdictions." 24 N.Y.2d at 581, 301 N.Y. S.2d at 529, 249 N.E.2d at 401.

More important, the contention that New York always applies the law that favors the New York party is based on a very narrow view of New York's interests. New York's interest is not only in serving the stake of New York residents in litigation: New York is also concerned with giving out-of-state residents fair treatment in order to encourage national usage of New York businesses, including New York medical facilities. *See O'Keeffe v. Bry,* 456 F.Supp. 822, 828 (S.D.N.Y.1978), *quoting Intercontinental Planning Limited v. Daystrom, Inc.,* 24 N.Y.2d 372, 383–84, 300 N.Y.S.2d 817, 826–27, 248 N.E.2d 576, 582–83, holding that New York would apply the choice of law rule which would allow the greatest opportunity for proving liability against brokers and finders (generally New Yorkers) on the grounds that "afford[ing] the greatest degree of protection against the unfounded claims of brokers and finders ... encourages the use of New York brokers and finders by foreign principals and contributes to the economic development of our State." A choice of law rule which

to a wrongful death action in which two of the defendants, one a Virginia resident and one a

assures out-of-state residents fair treatment in New York courts should medical treatment in New York cause unfavorable results encourages the use of New York medical facilities and therefore is in New York's interest.

In sum, we conclude that a New York court would find that Connecticut's interest in obtaining relief for its residents is superior to New York's interest in limiting its residents' liability. Accordingly, Haydu's motion for a ruling that Connecticut law is applicable to the issue of damages is granted.

It is so ordered.

Virginia corporation, had "*no* contacts" with New York. *Id.* at 197 (emphasis added).